IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 17, 2012 Session

# CITY OF MEMPHIS, A MUNICIPAL CORPORATION FOR THE USE AND BENEFIT OF MEMPHIS LIGHT GAS AND WATER v. TANDY J. GILLILAND FAMILY, L.L.C., ET AL.

Direct Appeal from the Circuit Court for Shelby County
No. CT-000435-10      James F. Russell, Judge

No. W2011-01611-COA-R3-CV - Filed August 29, 2012

This is a condemnation case. The trial court granted summary judgment in favor of Appellees, the landowners, finding that Appellant MLGW's attempted condemnation was not necessary. The evidence clearly establishes that MLGW had the right to take, and that the taking was for a public purpose. Therefore, the burden fell to Appellees to show that MLGW's taking was arbitrary or capricious. The evidence contained in the record does not establish that the taking was arbitrary or capricious with the result being that the condemnation is "conclusive upon the court." Because the court considered necessity and location in contravention of MLGW's condemnation power, we reverse the grant of summary judgment and remand to the trial court.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Randall D. Noel, John C. Henegan, Elizabeth E. Chance, and Charlotte Knight Griffin, Memphis, Tennessee, and Norman P. Hagemeyer, Ellendale, Tennessee, for the appellants, City of Memphis, A Municipal Corporation for the Use and Benefit of Memphis Light, Gas & Water Division.

Robert A. McLean and Allison Kay Moody, Memphis, Tennessee, for the appellees, Tandy J. Gilliland Family, L.L.C., Tandy Jones Gilliland, Trustee, Tandy J. Gilliland and Rudolph Jones, Jr., L.L.C., and Regina Morrison Newman, Shelby County Trustee.

**OPINION**

## I. Facts and Procedural History

This case involves the attempted condemnation of three parcels of land by Appellant The City of Memphis, for the use and benefit of Memphis Light, Gas and Water Division ("MLGW"). These parcels are currently owned by Tandy J. Gilliland Family, L.L.C., Tandy J. Gilliland and Rudolph Jones, Jr., L.L.C., and Tandy Jones Gilliland, Trustee of Callis Brunswick Trust (together "Appellees"). The disputed parcels comprise the northwest and northeast corners of the Canada Road and Highway 70 intersection (the "Intersection"), and have been owned by Appellees, or affiliated entities, for over one hundred years.

Since the 1950s, MLGW has had easements for its utility poles and lines on the Appellees' property at this Intersection. MLGW's easements have always been separate from any right-of-way held by the Tennessee Department of Transportation ("TDOT"). However, in the fall of 2008, Appellees entered into a period of negotiation with TDOT concerning the State of Tennessee's plan to install a traffic signal at the Intersection. Specifically, the parties discussed expanding TDOT's existing right-of-way at the Intersection to eighty feet north of the center line of Highway 70. The expansion was to accommodate the widening of Highway 70 beyond its then-existing four lanes. On or about March 30, 2009, Appellees deeded TDOT eighty feet of property as a right-of-way for the expansion of the Intersection and for the installation of a traffic signal. The expanded right-of-way encompassed MLGW's existing easements. Appellees contend that, in their negotiations, TDOT represented that utility providers, such as MLGW, who possessed existing easements, would be compensated for their respective easements and would be granted the right to relocate within the expanded right-of-way. However, the warranty deed, under which Appellees granted the right-of-way to TDOT does not reflect any agreement between Appellees and TDOT that MLGW's poles and facilities would be relocated within TDOT's right-of-way.

TDOT began construction at the Intersection. However, around October 2009, construction came to a halt when MLGW refused to move its poles into TDOT's expanded right-of-way. On October 29, 2009, TDOT requested that MLGW move its poles into the expanded right-of-way so that construction could resume; however, MLGW refused to comply, and filed suit.

On January 28, 2010, MLGW filed three lawsuits, one against each of the three Appellees, seeking to condemn a portion of Appellees' properties to create easements for its utility poles. Approximately one year later, on January 12, 2011, the three lawsuits were consolidated and MLGW filed an amended petition for condemnation against the Appellees. By its petition, MLGW sought to condemn an eight-foot-wide easement across each of

Appellees' respective parcels to allow its utility facilities to be moved outside the expanded TDOT right-of-way, as the situation had been since the 1950s. MLGW specifically sought condemnation to "construct, maintain, improve or alter its transmission line" on portions of the three properties owned by Appellees. MLGW also filed for a temporary, construction easement over a fifteen-foot portion of each of the properties. For each of the three properties, MLGW deposited funds with the court constituting the fair payment for both the permanent and construction easements. The amended petition for condemnation also sought to allow telecommunications and CATV carriers to continue their right to be attached to and to operate and maintain their respective lines on MLGW's utility poles.

On February 14, 2011, Appellees filed a motion to dismiss the amended petition for condemnation. In support of the motion, Appellees filed a statement of undisputed facts, along with the affidavit of the custodian of records for the City of Lakeland. MLGW responded to Appellees' proposed facts and, additionally, filed its own statement of facts in opposition to the motion to dismiss. Appellees responded to MLGW's statement of facts by submitting additional material facts and the deposition of William Goss, Shelby County's Real Estate Manager and a retired MLGW employee. MLGW filed its response to Appellees' additional facts and the case proceeded to hearing on the pending motions.

On June 10, 2011, the trial court heard arguments on Appellees' motion to dismiss the amended petition and MLGW's motion for condemnation, appropriation, and possession. We note that the trial court considered matters outside the pleadings at this hearing. Rule 12.02 of the Tennessee Rules of Civil Procedure provides that if "matters outside the pleadings are presented to and not excluded by the court," then a motion to dismiss shall be treated as a motion for summary judgment. Tenn. R. Civ. P. 12.02 (2011); *see also* **Jones v. Vasu**, 326 S.W.3d 577, 580 (Tenn. Ct. App. 2010). Accordingly, Appellees' motion to dismiss was treated as one for summary judgment in the trial court.

During the hearing, MLGW attempted to establish that there was a distinct and concrete need for its new easement because its poles and lines had to be moved from their existing location for the expansion of the Intersection. MLGW argued, that, by obtaining its own easement, MLGW and its rate-payers would be protected from the increased expense of moving its facilities a second time if and when TDOT expanded Highway 70 again in the future. Appellees argued that MLGW's condemnation was inappropriate because Appellees had given property to TDOT for a right-of-way. Appellees alleged that it would be a better plan to place MLGW's poles within TDOT's expanded right-of-way, and that, consequently, it was not necessary for MLGW to have its own, separate easement. Appellees also argued that MLGW was exceeding its eminent domain power under the Tennessee Code by seeking permission for third parties (i.e., telecommunications and CATV providers) to continue to attach to MLGW's poles within the requested easement. MLGW argued that allowing

telecommunications and CATV carriers to attach to its poles, once the poles were set up in the new easement, did not exceed MLGW's condemnation authority and did not change the "public use" of its utility poles to a private use.[1]  MLGW also submitted plans, showing that both MLGW and TDOT had always contemplated that  MLGW would obtain its own easement outside of TDOT's right-of-way.  One sketch, marked "approved" by TDOT in June 2009 (which was approximately two months after Appellees granted the extended right-of-way to TDOT) shows MLGW's proposed utility easement outside TDOT's right-of-way.  MLGW further cited to the Utility Relocation Contract between TDOT and MLGW, which expressly states MLGW's intention, allegedly known to TDOT, to obtain its own utility easement outside of TDOT's right-of-way.  Moreover, MLGW argued that, because it was to obtain its own easement independent of TDOT's, it had agreed to transfer its existing easement, now within TDOT's expanded right-of-way, to TDOT.

On July 1, 2011, the trial court entered an order, granting Appellees' motion to dismiss (now converted to a motion for summary judgment).  The court attached a transcript of its ruling from the bench to its July 1 order.  In relevant part, the trial court noted two grounds raised by Appellees to avoid condemnation: (1) that the relief sought exceeded MLGW's authority because it sought to allow "private" common carriers to access its poles; and (2) MLGW failed to show a "necessary" purpose for the condemnation.  The court ruled that a public purpose for the condemnation was shown, even if telecommunications and CATV carriers were permitted to attach to MLGW's poles.  The court then opined that the second step in its analysis was to determine if MLGW's taking was "necessary and essential."  The trial court ultimately concluded that the taking was not necessary and essential.  MLGW argues that, in reaching its conclusion, the trial court improperly substituted its judgment for that of MLGW by making a "general finding that showed a fundamental misapprehension of MLGW's existing easement and what [Appellees] could properly convey to TDOT."  In support of its argument, MLGW cites to several of the trial courts statements.  First, the trial court's statement that:

> [Appellee] owners in this case previously deeded to [TDOT]. . .all of the right, title and interest to all of the property deemed necessary for the widening of Highway 70 at its intersection with Canada Road.  This was to include the relocation of MLGW's utility poles and necessary and appropriate. . .right-of-way for that purpose.  That to include all the existing facilities over and upon those poles, including any ancillary users.  [MLGW] abjectly refused to relocate within that right-of-way

---

[1] We note that the Federal Pole Attachment Act requires utilities to grant access to telecommunications and CATV carriers at regulated rates.  47 U.S.C. §224(f)(1); *see* discussion *infra*.

for some reason that is yet unknown to the Court and for some reason that simply cannot be gleaned from this record. . . .

MLGW argues that this statement indicates that the trial court failed to consider the fact that Appellees could not remove MLGW's easement rights to certain portions of the property conveyed because MLGW owned the easement and the utility poles and the attached electrical lines and facilities located within the easement. In other words, Appellees did not own the portion of the property that they tried to convey.

The court went on to find that:

> Relocation was to be entirely at no cost to MLGW as TDOT is obligated to cover that cost by way of reimbursement to MLGW. MLGW refuses even to this day to cooperate. Rather, the Division seeks by these proceedings to encroach further upon the [Appellee] owners' lands essentially for no better reason [other than] because it wants to do so and has the power to do so. . . .

MLGW argues that this finding represents a "further encroachment" that "overlooks the fact that MLGW had a right to be on the property based upon the easement it has had for over 50 years."

The court further stated that:

> The Court bases that conclusion [i.e., that MLGW's easement was not necessary] upon the Scotty Plunk memo, which has been quoted earlier, and the Goss testimony, where both Scotty Plunk and William Goss tell[] us that this particular taking is not necessary and essential. To the contrary, they tell us that the necessary and essential right-of-way was included in these earlier owners— in these owners' earlier gift by deed of sufficient right-of-way for widening of Highway 70, including the relocation of the MLGW facilities, along with any associated users. The Court observes that this record is devoid of any indication of any other purpose or any conclusion otherwise. . .
>
> With that understanding on this record the Court is of the opinion that the city has failed to demonstrate that the proposed additional taking is necessary and essential for relocation of its

facilities.

Mr. Goss' testimony will be discussed below. However, as to the "Scotty Plunk memo," the record shows that Mr. Plunk, an employee of TDOT, sent an email to MLGW on October 29, 2010. In the email, Mr. Plunk opined that there is room in TDOT's right-of-way for MLGW's utility poles, and that he could see no justifiable reason why MLGW would not move its facilities into the TDOT right-of-way. Even though the trial court obviously relied upon Mr. Plunk's opinion, the record fails to establish that Mr. Plunk possessed the authority to make the decision as to where MLGW must place its utility poles. Moreover, Mr. Plunk's email constitutes blatant hearsay, which the trial court admitted over MLGW's objection. In denying the objection, the trial court stated that it was going to "hear everything everybody has to say," and that "objection is not appropriate in motion hearings." We respectfully disagree. It is well settled that hearsay evidence cannot be considered on a motion for summary judgment. Tennessee Rule of Civil Procedure 56.06 provides:

> Supporting and opposing affidavits shall be made on personal knowledge, **shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein**. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, **by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial**. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Expert opinion affidavits shall be governed by Tennessee Rule of Evidence 703.

Tenn. R. Civ. P. 56.06 (emphasis added). The email sent by Mr. Plunk and relied upon by the trial court is simply unauthenticated hearsay and is inadmissible as contemplated by Rule 56.06; *see also* **Cox v. Tennessee Farmers Mut. Ins. Co.**, 297 S.W.3d 237, 246 (Tenn. Ct. App. 2009), *perm. app. denied* (Tenn. Aug. 31, 2009) (citation omitted); **Price v. Becker**, 812 S.W.2d 597, 598 (Tenn. Ct. App. 1991) ( holding that plaintiffs' documents attached to their memorandum were inadmissible evidence as the documents were not authenticated by affidavit as required by Rule 56.06). Accordingly, the trial court's reliance upon Mr. Plunk's

email was error.

Regardless of Mr. Plunk's email, based upon the trial court's statements, *supra*, MLGW argues that the the court failed to consider MLGW's stated purpose for the taking, which was to relocate its facilities for current public needs and to protect rate-payers from the expense of relocation of the facilities when later anticipated expansion of the roadway begins. Thus, MLGW argues that the trial court misconstrued TDOT's obligation to pay to move the facilities by "appearing to believe that TDOT was obligated to move the facilities only if MLGW moved its facilities within TDOT's right-of-way." In so doing, MLGW argues that the trial court failed to "recognize the significance of MLGW being able to maintain its own electric utility easement in this area, which decision was entitled to deference by the trial court."

On July 15, 2011, Appellees filed a motion for fees and costs, seeking an award of attorney's fees and costs incurred as a result of MLGW's efforts to condemn. MLGW opposed the motion, arguing, in part, that the fees sought were excessive and unreasonable in relation to the value of the property at issue. On August 29, 2011, the trial court entered an order granting $92,782.43 in discretionary costs under Tennessee Rule of Civil Procedure 54.02 and statutory fees and costs under Tennessee Code Annotated Section 29-17-912. Although the order granting judgment to the Appellees on the issue of condemnation was entered on July 1, 2011, due to the pending issue of costs and fees, final judgment was not entered until October 28, 2011.

## II. Issues

MLGW appeals, raising three issues for review, as stated in its brief:

1. Whether condemnation was mandated by MLGW's patent statutory condemnation authority and the public use of the easements sought?

2. Whether Appellees' failure to prove a palpable abuse of power by MLGW in seeking its easements precluded the trial court's usurpation of the condemning authority's determination of necessity?

3. Whether the trial court's award of attorney's fees was unreasonable given the property right sought by the condemning authority and the value of the property sought to be condemned?

### III. Standard of Review

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8–9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id*. at 5 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners*, 2009 WL 3172134, at *3 (citing *Byrd*, 847 S .W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." *Id*. "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Landry v. South Cumberland Amoco, et al.*, No. E2009–01354–COA–R3–CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010) (citing *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995)). However, if there is any uncertainty concerning a material fact, then summary judgment is not the appropriate disposition. As stated by our Supreme Court in *Evco Corp. v. Ross*, 528 S.W.2d 20 (Tenn. 1975):

> The summary judgment procedure was designed to provide a
> quick, inexpensive means of concluding cases, in whole or in

part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He [or she] is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

*Id*. at 24–25.

## IV. The Law on Condemnation and Analysis

Tennessee courts have long held that "the power of eminent domain is against common right and all grants of such power are to be construed strictly against the condemnor and liberally in favor of the rights of property." *Vinson v. Nashville, Chattanooga & St. Louis Ry.*, 321 S.W.2d 841, 844 (Tenn. Ct. App. 1959.") "Of course the power of eminent domain is to be strictly construed and the procedure prescribed by statute must be followed." *Id*. at 844. "[T]he courts have the right and duty to determine the existence of authority to take, the existence of legitimate public use and related questions." *Duck River Elec. Membership Corp. v. City of Manchester*, 529 S.W.2d 202, 204 (Tenn. 1975). In *Pickler v. Parr*, 138 S.W.3d 210, 213 (Tenn. Ct. App. 2003), *perm. app. denied* (Tenn. March 8, 2004), this Court explained "the well-traveled analysis of the government's right to take." The *Pickler* Court employed a multi-step test to determine whether a taking is appropriate. *Id.* at 213. The first step is to determine whether the condemning authority has the right to take. *Id*. The second step in the analysis is to determine whether the taking is for public or private use. *Id*. If these questions are resolved in favor of the condemning authority, the authority's determination as to the need for the property is "conclusive upon the courts" unless the opponent to the taking establishes "a clear and palpable abuse of power, or fraudulent, arbitrary or capricious action." *Id*. (quoting *Maryville v. Edmondson*, 931 S.W.2d 932, 935 (Tenn. Ct. App. 1996), *perm. app. denied* (Tenn. July 8, 1996)).

Although the determination of whether private property is being taken for a public use is a judicial question, "'all other incidents of the taking are political questions, for the determination of the sovereign, and not judicial questions, for the determination of the courts.'" *City of Knoxville v. Heth*, 210 S. W.2d 326, 331 (quoting *Southern Ry. Co. v. Memphis*, 148 S.W. 662, 665 (Tenn. 1912)). Deciding which property shall be taken, "'determining its suitableness for the use to which it is proposed . . . as well as deciding the quantity required, are all political questions, which inhere in and constitute the chief value of the power to take.'" *Id.* A municipality's determination of "the necessity for the taking is not a question for resolution by the judiciary and, absent a clear and palpable abuse of

power, or fraudulent, arbitrary or capricious action, it is conclusive upon the courts." ***Duck River***, 529 S.W.2d at 204. In the context of eminent domain, a taking is arbitrary and capricious if it "can be characterized as a 'willful and unreasonable action without consideration or in disregard of facts or law or without determining principle.'" ***City of Chattanooga v. Classic Refinery***, No. 03A01-9712-CV-00552, 1998 WL 881862, at *6 (Tenn. Ct. App. Dec. 17, 1998) (quoting Black's Law Dictionary 105 (6th ed.1990)).

## A. MLGW's Right to Take

There is no dispute in this case that MLGW has the authority to condemn property. The Memphis City Charter, Section 684 provides:

> Memphis, Light, Gas and Water Division is hereby authorized and empowered to condemn any land, easements or rights of way, either on, under or above the grounds, for any and all purposes in connection with the construction, operation, improvement or maintenance of said electric system, gas system, or water system. Title to such property so condemned should be taken in the name of the City of Memphis. . . .

In the instant case, Appellees do not challenge MLGW's statutory authority to condemn the property at issue. Rather, Appellees argue that MLGW did not satisfy the prerequisites for condemnation, namely that the taking must be for public, not private use.

## B. Whether the Taking is for Public or Private Use

The construction and maintenance of electric utility lines is an established public use, which is expressly recognized in Tennessee's eminent domain statutes. Tenn. Code Ann. § 29-17-102(2)(B) ("Public Use" includes "[t]he acquisition of any interest in land necessary to the function of a public or private utility. . . ."); ***Heth***, 210 S.W.2d at 328 ("It is such a well recognized principle that the generation and distribution of electric current, supply of water and gas to the people is a 'public use' we do not deem it necessary to cite authority therefor.") In the instant case, the proof before the trial court was that MLGW's facilities had to be moved for the road improvement at the Intersection, and that the relocation of the poles was required in order for MLGW to continue to provide utility services to the public in that area. Accordingly, the trial court was "satisfied that even to the point of associated use by other carriers a public purpose is stated here."

Appellees argued that the condemnation was inappropriate because MLGW sought the ability to allow telecommunications and CATV carriers to have access to, and use of,

MLGW's utility poles within the easement. Consequently, Appellees argued that MLGW's condemnation, at least in that respect, was one for private benefit and not for public use. In response, MLGW cites the Federal Pole Attachment Act, which provides, in relevant part, that "[a] utility shall provide a cable television system or any telecommunication carrier with nondiscriminatory access to any pole, duct, conduit, or right-of-way owned or controlled by it." 47 U.S.C. §224(f)(1). By its plain terms, the Pole Attachment Act requires MLGW to grant telecommunication and cable companies access to its utility poles. Allowing such access is mandatory and is not tantamount to MLGW condemning the property for private use. Although the trial court correctly concluded that the proposed use was public, it appears that the trial court misconstrued MLGW's legal obligations under the Pole Attachment Act.

The trial court interpreted the Pole Attachment Act as only prohibiting a utility from discriminating against a carrier for access, but did not go so far as to conclude that the access was mandatory. Based upon the word "nondiscriminatory," as used in the Pole Attachment Act, the trial court concluded that MLGW did not have to provide access to telecommunication and CATV carriers. Consequently, the court held that the Pole Attachment Act did not provide legal support for MLGW's request to allow third parties to use its facilities in the easement it sought. This holding is not in accord with established law.

Courts have interpreted the Pole Attachment Act as a mandatory access provision. *See **Gulf Power Co. v. United Sttates***, 187 F.3d 1324 (11th Cir. 1999). As noted in ***Gulf Power***, when the Pole Attachment Act was first adopted, it did not require that a public utility provide cable companies with access to its utility poles. ***Id***. at 1326–27. However, in 1996, the Act was amended to contain a "mandatory access provision." ***Id***. at 1327. The only exceptions to the mandatory access provision are if some safety, reliability, or other engineering problem would prevent safe access. ***Id***. As discussed in ***Alabama Power Co. v. Federal Communications Commission***, 311 F.3d 1357 (11th Cir. 2002):

> As part of the sweeping changes Congress brought about through the Telecommunications Act of 1996, Congress amended the 1978 Act by giving cable companies a right of forced attachment. That is, power companies could not decline offers to attach at regulated rates, save for the statutory exceptions of insufficient capacity or some safety, reliability, or other engineering problem. This change to a forced-access regime was perhaps spurred by new laws, consistent with the 1996 Act's vision of competition in all sectors of the data distribution business, that gave large power companies freedom to enter the telecommunications business rather than remain quarantined to the electricity business. Perhaps fearing that

-11-

electricity companies would now have a perverse incentive to deny potential rivals the pole attachments they need, Congress made access mandatory.

*Id*. at 1363 (internal citations and footnote omitted).

From the foregoing, it is clear that the Pole Attachment Act mandates that MLGW shall allow access to CATV and telecommunication providers. Accordingly, whether a cable television or telecommunications carrier seeks to attach its facilities to MLGW's utility poles does not indicate that the underlying easement is sought for a private use and not a public use.

### C. Palpable Abuse of Power or Arbitrary Action

Having determined that MLGW had the authority to condemn, and that the condemnation was for public use, the taking is "conclusive on the court" absent proof from Appellees of a palpable abuse of power or arbitrary or capricious action. In the absence of such proof, the trial court has no authority to consider the question of necessity of the easement.

In the instant case, the trial court made no specific finding that MLGW acted in a fraudulent, arbitrary, or capricious manner with regard to the condemnation. Rather, it appears that the trial court substituted its judgment for MLGW's in first concluding that the separate easement was not necessary, and then in concluding that MLGW should put its facilities within the expanded TDOT right-of-way. Consequently, the trial court's ruling ostensibly imposes an injunction on MLGW, requiring it to place its poles in the TDOT right-of-way. In the absence of a finding that MLGW was acting arbitrary, capricious, or exercising a flagrant abuse of its condemnation power, on which question the Appellees have the burden of proof, the court's review of the condemnation decision was limited. Thus, because MLGW's decision to condemn an easement was a legislative act, any review by the courts requires "considerable deference to the decision of the governmental authority." *McCallen v. City of Memphis*, 786 S.W.2d 633, 640 (Tenn. 1990); *see also* **Heth**, 210 S.W.2d at 326 ("The determinations of 'public use' by the state or its agencies are entitled to great weight or respect by the courts, since they relate to matters which should and must have been known by the legislative branch."). Such legislative actions "are presumed to be valid and a heavy burden of proof rests upon the shoulders of the party who challenges the action." *McCallen*, 786 S.W.2d at 641. "[T]he court's primary resolve is to refrain from substituting its judgment for that of the local governmental body." *Id*. The question, then, is whether the trial court should have reached the question of necessity. In answering this question, we must view the evidence in the light most favorable to MLGW as the party

opposing summary judgment.

Turning to the record, Appellees argued that obtaining an easement now to avoid the cost of moving its facilities if the road is later widened constituted an impermissible future use. Although the trial court did not specifically rule on this question, as noted in **Pickler**, condemnation for a later, identified need is not a "future use." **Pickler**, 138 S.W.3d at 213–14. Consequently, this argument is not sufficient to shift the burden on summary judgment to MLGW.

Appellees' primary argument in support of its contention that MLGW acted arbitrarily in seeking the condemnation is that Appellees deeded sufficient property to TDOT to allow MLGW room to place its facilities in the TDOT right-of-way. However, contrary to Appellees' assertion, their transfer of property to TDOT to establish a new right-of-way could not unilaterally destroy MLGW's existing property rights in this property. Rather, the gifted property was subject to MLGW's existing easement. As noted, the deeds making the gift did not include language that MLGW's facilities were to be maintained in the gifted right-of-way. In fact, there is no mention whatsoever of MLGW in these deeds. Thus, we cannot read the deeds, granting TDOT's extended easement, to compel MLGW to place its facilities in TDOT's right-of-way. MLGW never consented to have its poles placed in the TDOT right-of-way, and, in fact, TDOT's plan and design for the renovation of the Intersection showed that MLGW expected its poles to be placed in a separate easement, outside of TDOT's right-of-way. This plan is further evidenced in the express language found in the Utility Relocation Contract entered between TDOT and MLGW, which requires MLGW to "acquire all utility rights-of-way outside of the available public right-of-way as may be needed to relocate its utility facilities. . . . [MLGW] agrees to acquire these rights-of-way at no cost to TDOT. . . ."

In its bench ruling, the trial court stated that it "read with considerable interest" the deposition of William Goss to determine that a separate easement to MLGW was not necessary because MLGW could place its facilities in TDOT's right-of-way. The portion of Mr. Goss' testimony that the court relies upon is as follows:

Q. Are you aware of any policy at MLGW today which would preclude—a written policy now—a written policy of MLGW which would preclude it from locating its utility poles within the TDOT right-of-way at Highway 70 and Canada Road?

A. No, I am not aware of any written policy; however, because of my relationship with MLGW through Shelby County government and working on other road widening projects,

-13-

> MLGW currently has a policy, though it's probably unwritten at this day, the operational policy, and if their—if MLGW's facilities are within an easement, then MLGW requires that the adjusted facilities also be within an easement.
>
> And the rationale for that is that, as long as they're in an easement, that any subsequent widening of the roadway, that MLGW would be paid by the government, whether it's municipal, county or state, 100 percent for adjusting their facilities; whereas, if the facilities are not within an easement but just in a road right-of-way, then any subsequent adjustments would be at MLGW's expense.

Mr. Goss further testified that, when he was employed at MLGW and it was necessary to move poles for improvements, MLGW worked to ensure that its facilities remained within MLGW's existing easements "because any subsequent widening, we would still be in an easement and we would get paid 100 percent for any subsequent adjustment." Rather than supporting the trial court's position, Mr. Goss' testimony clearly supports the justification that MLGW has relied upon throughout these proceedings—that maintaining its own easement is necessary in order to defer future costs of relocation. MLGW has had an easement for poles in this area for over fifty years. Because of changes to the Intersection, it is undisputed that MLGW must now move the poles for the public need of continuing to provide power to residents in the Lakeland area. It is also undisputed that, if MLGW's poles are located within their own easement, then TDOT must bear the expense of moving MLGW's facilities should that need arise. Costs of relocation are expensive; in this case, they are estimated in excess of $200,000.00. If MLGW's poles are placed within TDOT's extended right-of-way, as suggested by the trial court, then the costs of relocating the poles for future road improvements would be born by MLGW and, subsequently, by its ratepayers. As Mr. Goss conceded "[it is] very logical for MLGW to want to keep itself within an easement so that it minimizes expense for its rate payers. . . ." This purpose is logical, and we conclude that Mr. Goss' testimony does not meet Appellees' "heavy burden" to show that MLGW's attempted condemnation was a palpable abuse of power or an arbitrary or capricious action.

### D. The Trial Court's Ruling is Contrary to Existing Condemnation Law

In reaching its conclusion that a separate easement was not necessary and that MLGW could use TDOT's right-of-way for its poles, the trial court substituted its own judgment of necessity for that reserved to the legislative branch, thus exceeding its authority. In ***Dep't of Highways v. Stepp***, 266 S.W. 776 (Tenn. 1924), the court held that where the condemnation was with authority and for a public purpose the landowner could not "contest

such questions as the utility of the improvement, the choice of route, and the necessity for taking, because these are legislative questions which the courts cannot review." *Id.* at 777. Rather, the court's review is limited where no fraud or palpable abuse of power has occurred. *Id*. The term "palpable abuse of power" is said to be an abuse of discretion, delegated by the Legislature, by an attempted appropriation in utter disregard of the possible necessity for its use, or a use of the power as the cloak of some sinister private scheme." *Id*. at 777–78. Similar to the case at bar, in *Stepp*, the landowners put on proof that there was a more suitable location for the proposed roadway and that it would cost less to construct it in a different area. As to this argument, the Tennessee Supreme Court explained:

> Such a controversy between the landowner and the agency of the state seeking to take land for public use cannot be treated as a litigious issue of fact, otherwise every condemnation proceeding would involve a long sharp controversy between the landowner and the state, not only as to whether the taking was for the public good, but as to the choice of a location with the ultimate choice lodged in a jury.

*Id.* at 778. As further noted by the court in *Kingsport Utilities, Inc. v. Steadman*, 139 F. Supp. 622 (E.D. Tenn. 1956):

> [The power of eminent domain] would be a vain and empty thing if the owner could contest the advisability of taking his property rather than his neighbor's, or if he could interpose as a defense to the taking that other property could be found which would suit the public purposes better, or that he, the owner, was of the opinion and could prove that the public needed more or less the quantity proposed to be taken. The power to take would be of small value, if the thing to be taken, in its quantity, quality, and locality, could be determined by another and adverse interest.

*Id*. at 624 (quoting *Southern Ry*., 148 S.W. at 665). Accordingly, the trial court did not have the authority to address Appellees' argument that it was better for MLGW to locate its poles within TDOT's right-of-way rather than within its own, separate easement.

The trial court further erred when it considered the necessity for the easement. In reaching this question, the trial court relied upon the case of *City of Chattanooga v. Classic Refinery, Inc.*, No. 03A01-9712-CV-00552, 1998 WL 881862, (Tenn. Ct. App. Dec. 17, 1998), for its authority. In *Classic Refinery*, the court analyzed the necessity of the taking

-15-

solely because the purpose and scope of the public taking was misstated in the petition, thus making the proposed condemnation arbitrary and capricious. In *Classic Refinery*, the condemnation was sought for the public purpose of constructing a stadium. *Id.* at *1, *5. For purposes of the stadium, the City of Chattanooga attempted to condemn a commercial building for a parking lot near the stadium. *Id*. at *2. By the time the petition to condemn the commercial building was filed, the stadium was complete and in use. *Id*. at *5–*6. Therefore, the court concluded that the expressed "public purpose" of constructing a stadium was not sufficient for the taking. Thus, condemning property for the stated purpose of building a stadium that was already complete was arbitrary and capricious. *Id*. at *8. Having determined that the purpose was arbitrary and capricious, under the foregoing principles, the door was opened to evaluate the necessity of the taking. *Id*. The *Classic Refinery* Court suggested that, upon remand, the city be given the opportunity to amend its petition to state a valid public purpose for the taking. *Id*.

The *Classic Refinery* case is clearly distinguishable from the instant appeal. Here, the stated public purpose is a valid public purpose—i.e., MLGW must move its facilities to allow it to continue to provide utilities to ratepayers in the area. MLGW wishes to relocate its facilities on property where it maintains a valid easement. This decision is not arbitrary; rather, it is made for a valid business reason, which is to avoid having to pay costs of any future relocations. Regardless, once the trial court concluded that there was a valid public purpose for the easement, there was no need for it to inquire further as to necessity. The *Classic Refinery* case did not open the door to judicial scrutiny of the necessity of every easement sought by condemnation.

The evidence shows that MLGW had the authority to condemn, and that the taking was for a public purpose. However, the evidence fails to satisfy Appellees' heavy burden on the question of whether MLGW's condemnation was a clear and palpable abuse of power, or was otherwise fraudulent, arbitrary or capricious. In the absence of such a finding, the trial court exceeded its authority in considering the question of necessity and ostensibly enjoining MLGW to relocate its facilities in TDOT's expanded right-of-way. Because the trial court's grant of summary judgment was prefaced on its finding concerning necessity of the easement, we must reverse the grant of summary judgment in favor of Appellees. The undisputed evidence shows that MLGW had the right to condemn the Appellees' property, and that the condemnation was for the public purpose of providing utilities in that area. The evidence does not show that MLGW's motive in this taking was fraudulent, or that it was arbitrary or capricious. In the absence of this showing, the court has fulfilled its role and the taking should be allowed. Based upon the record, we conclude that motion of MLGW for condemnation, appropriation, and possession should have been granted by the trial court.

## V. Attorney's Fees and Costs

An award of attorney's fees is reviewed under an abuse of discretion standard. ***Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn. 2011). An abuse of discretion occurs where the trial court "'applied incorrect legal standards, reached an illogical conclusion, based its decision on clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party.'" ***Id***. (quoting ***Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.***, 249 S.W.3d 346, 358 (Tenn. 2008). In the instant case, the trial court applied an incorrect legal standard. Specifically, MLGW had the right to condemn, and was doing so for a public purpose. Because Appellees evidence fails to meet the "heavy burden" to show that MLGW's taking was arbitrary or capricious, the taking is "conclusive upon the court." In substituting its own judgment for MLGW's on the issue of necessity, the trial court exceeded its authority. Because the grant of summary judgment to Appellees' was in error, we conclude that the award of attorney's fees and costs to Appellees was, likewise, error. Accordingly, we reverse this award.

For the foregoing reasons, we reverse the order of the trial court, granting summary judgment in favor of Appellees. We also reverse the award of attorney's fees and costs to Appellees. The case is remanded for entry of judgment in favor of MLGW for condemnation, appropriation and possession, for assessment of the fair value of the condemned property, and for such further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are assessed to the Appellees, Tandy J. Gilliland Family, L.L.C., Tandy J. Gilliland and Rudolph Jones, Jr., L.L.C., and Tandy Jones Gilliland, Trustee of Callis Brunswick Trust, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE