# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 28, 2015 Session

## CITY OF MEMPHIS, ET AL. v. TANDY J. GILLILAND FAMILY LLC, ET AL.

### Appeal from the Circuit Court for Shelby County
### No. CT00043510      James F. Russell, Judge

_____

### No. W2014-02472-COA-R3-CV – Filed December 16, 2015
_____

This is the second appeal of this eminent domain case. In the first appeal, *City of Memphis v. Tandy J. Gilliland Family, LLC, et al.*, 391 S.W.3d 60 (2012), this Court held that Appellee City of Memphis, a municipal corporation for the use and benefit of Memphis Light, Gas, and Water Division, was entitled to condemn a portion of Appellants' property to erect poles and other facilities to provide utility services to MLGW customers. In addition to the provision of utility services, Appellee also sought co-location rights to allow telecommunications and cable providers to attach to MLGW's poles. In the first appeal, Appellants argued that the co-location rights transformed the condemnation from public to private use. In our first opinion, we held that the Pole Attachment Act, 47 U.S.C. § 224, mandated that MLGW would allow co-location rights. On remand, the trial court held that it was bound by the law of the case as set out in our first opinion and denied Appellants discovery concerning the co-location rights before granting those rights to Appellee. In the instant appeal, Appellants contend that our previous holding was incorrect because the Pole Attachment Act specifically exempts MLGW from the definition of "utility." We agree, and reverse our previous holding to the extent that we held that the Pole Attachment Act is mandatory on MLGW. Because of our erroneous holding, the issues of whether MLGW is entitled to co-location rights and the proper compensation, if any, for these rights have not been addressed in the trial court. Accordingly, we vacate the trial court's order insofar as it grants Appellee co-location rights and remand the case for discovery and hearing on these issues. We affirm the trial court's order insofar as it allows Appellee to condemn Appellants' property for utility purposes.

**Tenn. R. App. p. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed in Part, Vacated in Part and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the Court, in which ARNOLD B. GOLDIN and BRANDON O. GIBSON, J.J., joined.

Robert A. McLean and Allison Kay Moody, Memphis, Tennessee, for the appellants, Tandy Jones Gilliland, Tandy J. Gilliland Family, LLC, and Tandy J. Gilliland and Rudolph Jones, Jr., LLC.

Randall D. Noel, Elizabeth E. Chance, and Diana M. Comes, Memphis, Tennessee, for the appellee, City of Memphis.

**OPINION**

**I. Background**

This is the second appeal of this case. In *City of Memphis v. Tandy J. Gilliland Family, LLC, et al.*, 391 S.W.3d 60 (2012) ("*Gilliland I*"), this Court determined that the Appellee, the City of Memphis, a municipal corporation for the use and benefit of Memphis Light Gas and Water Division ("MLGW"), could condemn an eight foot easement and a fifteen foot clearing easement across property owned by Tandy Jones Gilliland, Tandy J. Gilliland Family, LLC, and Tandy J. Gilliland and Rudolph Jones, Jr., LLC. (collectively, "Appellants").

The case began on January 28, 2010, when MLGW filed lawsuits against each of the three Appellants seeking to condemn a portion of Appellants' properties to create easements for its utility poles. *Gilliland I*, 391 S.W.3d at 62. Approximately one year later, on January 12, 2011, the three lawsuits were consolidated, and MLGW filed an amended petition for condemnation against the Appellants. *Id.* In addition to seeking condemnation "to construct, maintain, improve or alter its transmission line," MLGW's amended petition also sought to allow telecommunications and CATV carriers to attach, operate, and maintain their respective lines on MLGW's utility poles within the condemned easement areas. *Id.* at 62-63; *see* further discussion *infra*.

Appellants filed a motion to dismiss MLGW's amended petition, arguing that the condemnation action exceeded MLGW's authority and that the amended petition failed to show that the condemnation was necessary for the use and benefit of MLGW. Specifically, Appellants argued that they had previously granted a right-of-way to the Tennessee Department of Transportation ("TDOT") and that MLGW could locate its poles within

2

TDOT's right-of-way, thus making it unnecessary for MLGW to acquire a separate easement. *Id*. at 63.

On July 1, 2011, the trial court entered an order granting Appellants' motion to dismiss (which had been converted to a motion for summary judgment due to the trial court's consideration of evidence outside the pleadings, Tenn. R. Civ. P. 12.02). *Id*. at 64. In *Gilliland I*, MLGW appealed the trial court's dismissal of its condemnation action, and this Court reversed the trial court's grant of summary judgment in favor of Appellants and remanded the case "for entry of judgment in favor of MLGW for condemnation, appropriation, and possession," and "for assessment of the fair value of the condemned property." *Id*. at 73. In so ruling, we explained that

> the evidence shows that MLGW had the authority to condemn, and that the taking was for a public purpose. However, the evidence fails to satisfy [Appellants'] heavy burden on the question of whether MLGW's condemnation was a clear and palpable abuse of power, or was otherwise fraudulent, arbitrary or capricious. In the absence of such a finding, the trial court exceeded its authority in considering the question of necessity and ostensibly enjoining MLGW to relocate its facilities in TDOT's expanded right-of-way. Because the trial court's grant of summary judgment was prefaced on its finding concerning necessity of the easement, we must reverse the grant of summary judgment in favor of [Appellants]. The undisputed evidence shows that MLGW had the right to condemn the [Appellants'] property, and that the condemnation was for the public purpose of providing utilities in that area. The evidence does not show that MLGW's motive in this taking was fraudulent, or that it was arbitrary or capricious. In the absence of this showing, the court has fulfilled its role and the taking should be allowed.

*Gilliland I*, 391 S.W.3d at 73. This portion of our analysis in *Gilliland I* is not disputed in the instant appeal. However, as part of their argument in the *Gilliland I* appeal, Appellants asserted that the portion of MLGW's amended petition that involved co-location rights transformed the public use of the easement (for electrical service) into a private one. Because the co-location rights were raised in the first appeal as one of Appellants' arguments, we addressed the issue in *Gilliland I* and held that the Federal Pole Attachment Act, 47 U.S.C. §224 ("Pole Act"), mandated that MLGW grant co-location rights to telecommunication and CATV carriers. Whether this ruling was correct is an issue before us in the instant appeal, and we will address this question below. Having held in *Gilliland I* that MLGW had the right to condemn Appellants' property, we remanded the case "for entry of judgment in favor of MLGW for condemnation . . . and for assessment of the fair value of the condemned property." *Id*. at 73. Because Appellants objected to MLGW's request for

co-location rights and asserted that such rights were not included in MLGW's condemnation power, Appellants sought review of our *Gilliland I* opinion in the Tennessee Supreme Court; however, our Supreme Court denied Appellant's petition for certiorari on January 9, 2013.

On February 6, 2013, Appellants filed a "Motion for Order of Possession" in the trial court. In their motion, Appellants proposed an order of possession that "eliminates the language proposed by MLGW granting it rights to telecommunication carriers and others to co-locate on MLGW's poles." Specifically, Appellants argued that "awarding such co-location rights exceeds the condemnation powers of MLGW under its authorizing statute." Appellants averred that MLGW has consistently taken the position that the Pole Act "requires it to grant co-location access to other parties;" however, Appellants argued that "MLGW's court filing [insisting that the Pole Act required it to grant co-location rights] and the Tennessee Court of Appeals decision [in *Gilliland I*] are incorrect [insofar as this Court held that the Pole Act was mandatory on MLGW]. MLGW opposed Appellants' motion for possession, asserting that the trial court was bound, under the law of the case doctrine, to enforce our judgment as stated in *Gilliland I* and to "awarded MLGW all the property rights requested in the Amended Complaint, including co-location rights." The trial court agreed with MLGW's position and, in its July 18, 2013 order of condemnation, appropriation and possession, held that it was bound by our opinion in *Gillilland I*. Accordingly, the trial court granted MLGW its easement as described in the amended petition, which easement included co-location rights.

On August 8, 2013, Appellants sought permission, in the trial court, to file an interlocutory appeal of the trial court's July 18, 2013 order. MLGW opposed the motion, and the trial court held that Appellants had failed to satisfy the requirements for the interlocutory appeal and, thus, denied the motion. Thereafter, the parties issued written discovery in anticipation of the trial on the valuation of the condemned property.

On August 21, 2014, MLGW filed a motion for summary judgment, wherein it asserted that the funds deposited with the trial court at the commencement of the condemnation action represented the value of the condemned property. Also on August 21, 2014, MLGW moved the trial court for a protective order quashing Appellants' discovery on MLGW's valuation of the property. In response, Appellants filed a Notice Limiting Issues for Trial, which did the following: (1) accepted MLGW's deposit with the trial court of $12,910.00 as the market value of the real property condemned in the action; (2) reserved the right to seek additional damages omitted from MLGW's appraisals, namely co-location property rights; and (3) specifically stated that the value of co-location rights is an issue remaining to be tried in the case. Appellants also filed a motion to compel discovery from MLGW concerning the remaining issues to be tried, namely the value of the co-location rights.

4

On October 24, 2014, the trial court entered an order granting MLGW's motion for protective order and denying Appellants' motion to compel discovery on co-location rights. The order states, in relevant part, that

> the discovery sought by Appellants relates solely to their alleged damages for [MLGW's] condemnation of co-location rights and is improper and irrelevant for the reason that [MLGW's] ownership of co-location rights has already been adjudicated in [MLGW's] favor . . .

In accordance with the October 24, 2014 ruling, Appellants were unable to conduct discovery regarding the value of co-location rights. In the absence of any countervailing evidence to dispute MLGW's valuation of the condemned property, on November 19, 2014, the trial court entered an order granting MLGW's motion for summary judgment. Appellants appeal.

## II. Issues

Appellants raise the following issues for review as stated in their brief:

1. Whether MLGW, a municipally owned utility and political subdivision, is exempt from the Federal Pole Attachment Act, 47 U.S.C. §224, and, therefore, the August 29, 2012 Tennessee Court of Appeals' Opinion entered in this case should be overturned.

2. [W]hether the trial court erred in denying discovery on valuation of co-location rights and the case should be remanded for valuation of the co-location rights condemned.

3. Whether the trial court erred in awarding MLGW co-location rights in the order of possession and summary judgment since MLGW is not authorized by law to condemn the subject property to obtain co-location rights.

4. Whether judgment should be entered for Appellants and MLGW's petition dismissed as to the condemnation of co-location rights since MLGW has no authority to condemn and acquire co-location rights on the subject property.

5. In the alternative, should the Court find statutory authority for MLGW to condemn co-location rights, whether Appellee's failure to obtain an appraisal for co-location rights and pay that sum into Court requires reversal of the award of co-location rights and dismissal of Appellee's cause of action for those rights.

5

## III. Standard of Review

Appellants' first issue involves an appeal of the law of the case as stated by this Court in *Gilliland I*. Specifically, Appellants contend that this Court erroneously held that the Pole Act was mandatory on MLGW, thus limiting the trial court's ability to allow discovery on MLGW's request for co-location rights in connection with its easement and the valuation of the condemned property in light of MLGW's request for co-location rights. The Appellants' appeal of the law of the case and the trial court's order of condemnation and possession and its order on summary judgment, insofar as these decisions rest on the trial court's application of our alleged erroneous holding in *Gilliland I*, present questions of law, which we review *de novo* with no presumption of correctness. *Cullum v. McCool*, 432 S.W.3d 829, 832 (Tenn. 2013).

## IV. Law of the Case / *Gilliland I*

As explained by our Supreme Court in *Memphis Pub. Co. v. Tennessee Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303 (Tenn. 1998):

> The phrase "law of the case" refers to a legal doctrine which generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case. 5 Am.Jur.2d Appellate Review § 605 (1995). In other words, under the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal. *Life & Casualty Ins. Co. v. Jett*, 175 Tenn. 295, 299, 133 S.W.2d 997, 998–99 (1939); *Ladd v. Honda Motor Co., Ltd*., 939 S.W.2d 83, 90 (Tenn. App.1996). The doctrine applies to issues that were actually before the appellate court in the first appeal and to issues that were necessarily decided by implication. *Ladd*, 939 S.W.2d at 90 (citing other authority). The doctrine does not apply to dicta. *Ridley v. Haiman*, 164 Tenn. 239, 248–49, 47 S.W.2d 750, 752–53 (1932); *Ladd*, 939 S.W.2d at 90.
> The law of the case doctrine is not a constitutional mandate nor a limitation on the power of a court. 5 Am.Jur.2d Appellate Review § 605 (1995); *Ladd*, 939 S.W.2d at 90. Rather, it is a longstanding discretionary rule of judicial practice which is based on the common sense recognition that issues previously litigated and decided by a court of competent jurisdiction ordinarily need not be revisited. Ladd, 939 S.W.2d at 90 (citing other cases). This rule promotes the finality and efficiency of the judicial process, avoids indefinite relitigation of the same issue, fosters consistent results in the same litigation, and assures the obedience of lower courts to the decisions of appellate courts.

*Ladd*, 939 S.W.2d at 90; 5 Am.Jur.2d Appellate Review § 605 (1995); 1B James W. Moore, Moore's Federal Practice ¶ 0.404[1] (2d ed.1995); 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478, at 790 (1981).

Therefore, when an initial appeal results in a remand to the trial court, the decision of the appellate court establishes the law of the case which generally must be followed upon remand by the trial court, and by an appellate court if a second appeal is taken from the judgment of the trial court entered after remand. . . . There are limited circumstances which may justify reconsideration of an issue which was issue decided in a prior appeal: (1) the evidence offered at a trial or hearing after remand was substantially different from the evidence in the initial proceeding; (2) the prior ruling was clearly erroneous and would result in a manifest injustice if allowed to stand; or (3) the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal. *See generally* 5 Am.Jur.2d Appellate Review §§ 611–613 (1995 & 1998 Supp.) . . . *Arizona v. California*, 460 U.S. 605, 618, n. 8, 103 S.Ct. 1382, 1391, n. 8, 75 L.Ed.2d 318 (1983) (The doctrine does not apply if the court is "convinced that [its prior decision] is clearly erroneous and would work a manifest injustice."). . . .

*Id*. at 306 (some citations omitted).

In *Gilliland I*, the parties litigated the necessity of MLGW's condemnation and whether the condemnation was for a public or private use. As part of the property rights requested in its amended petition, MLGW requested co-location rights that would give MLGW the right to sell utility pole access to private telecommunication carriers. The applicable portion of the amended petition requests that

[i]f, at any time the City of Memphis, acting through the Memphis Light Gas & Water Division, shall deem it expedient so to do, it may permit certain telecommunications carriers or their associates and allied companies, and/or their successors and assigns, to use the aforesaid poles or rights of way jointly with the City of Memphis, acting through the Memphis Light Gas & Water Division, and certain telecommunications carriers, or their associates and allied companies and/or their successors and assigns, may be granted the right to construct, operate and maintain their lines of telephone and telegraph, and for general transmission of intelligence consisting of such wire, cables, fiber optic cable, telecommunication antennas, conduits, guys, anchors, and other fixtures appurtenances as may from time to time be required across, under, over and upon the foregoing property, and the further right to trim or cut down all dead,

7

weak and dangerous trees from time to time if such trees should be tall enough to fall into the line of such company.

Such co-location rights as those described in MLGW's amended petition are contemplated in the Pole Act, which provides, in pertinent part, that "[a] utility shall provide a cable television system or any telecommunication carrier with nondiscriminatory access to any pole, duct, conduit, or right of-way owned or controlled by it." *Gilliland I*, 391 S.W.3d at 68 (citing 47 U.S.C. §224(f)(1)). In the first appeal, Appellants maintained that MLGW's request for co-location rights on private property served a private purpose and was not authorized under Tennessee eminent domain law. Appellants found support for their argument in Section 684 of the Memphis City Charter, which, as set out below, does not specifically include any right to co-location in MLGW's enumerated powers of condemnation, to wit:

> Memphis Light, Gas and Water Division is hereby authorized to condemn any land, easements or right of way, either on or under or above the grounds, for any and all purposes *in connection with the construction, operation, improvement or maintenance of said electric system, gas system, or water system. . . .*

*Gilliland I*, 391 S.W.3d at 68 (emphasis added). MLGW, however, took the position that the mandatory language contained in the Pole Act, i.e., "a utility **shall** provide . . .," mandates that MLGW provide pole access to private telecommunication carriers, and, therefore, co-location constitutes a public use. This question, however, was not specifically tried in the lower court. Rather, the applicability of the Pole Act was raised only insofar as inclusion of co-location rights in MLGW's amended petition might transform the purpose of the easement from public to private use. This was the question we addressed in *Gilliland I*. Under the heading "Whether the Taking is for Public or Private Use," *Gillilland I*, 391 S.W.3d at 68, we stated, in relevant part, that:

> By its plain terms, the Pole Attachment Act requires MLGW to grant telecommunication and cable companies access to its utility poles. Allowing such access is mandatory and is not tantamount to MLGW condemning the property for private use. Although the trial court correctly concluded that the proposed use was public, it appears that the trial court misconstrued MLGW's legal obligations under the Pole Attachment Act.

*Id*. Unfortunately, in reaching the foregoing conclusion, this Court failed to consider the statutory definition of a "utility." The Pole Act language, which we deemed mandatory on

8

MLGW, requires a "utility" to allow co-location rights to telecommunication and cable providers. However, the Pole Act, at 47 U.S.C. §§ 224(a)(1)-(3) specifically excludes, from the definition of a "utility," "any railroad, any person who is cooperatively organized, or any person owned by the Federal Government or any State," or "any political subdivision, agency, or instrumentality thereof." The City of Memphis is a political subdivision of the State of Tennessee, and MLGW is a subdivision of the City of Memphis. Op. Tenn. Att'y Gen. No. 05-006, 2005 WL 273519 (Jan. 20, 2005) ("MLGW is not a separately chartered corporation but is a division of the City of Memphis, created by a private act amendment to the Memphis City Charter."). Because MLGW is a subdivision of the City of Memphis, which is a subdivision of the State of Tennessee, 47 U.S.C. §§ 224 (a)(1)-(3) exempts MLGW from the definition of "utility." Because it does not meet the definition of a utility for purposes of the Pole Act, Section 224(f)(1) of the Pole Act is not mandatory on MLGW.[1] Accordingly, to the extent that our opinion in *Gilliland I* holds that the Pole Act is mandatory on MLGW, our opinion is incorrect.

As stated by our Supreme Court in *Cooper v. Logistics Insight Corp*., 395 S.W.3d 632 (Tenn. 2013):

> This Court considers the doctrine of stare decisis to be of "commanding importance." **Webb v. Nashville Area Habitat for Humanity, Inc.**, 346 S.W.3d 422, 431 (Tenn. 2011); **Metropolitan Gov't of Nashville & Davidson Cnty. v. Poe**, 215 Tenn. 53, 80, 383 S.W.2d 265, 277 (1964). It gives "firmness and stability to principles of law." **In re Estate of McFarland**, 167 S.W.3d 299, 306 (Tenn. 2005). It also guards against appellate judges "writ[ing] their personal opinions on public policy into law." **Jordan v. Knox Cnty**., 213 S.W.3d 751, 780 (Tenn.2007) (citing Lewis F. Powell, Jr., Stare Decisis and Judicial Restraint, 16 J. Sup.Ct. Hist. 13, 16 (1991) [hereinafter Powell, Stare Decisis ] ).
>
> However, repeating the words of Justice Brandeis, this Court has also stated that we do not view the doctrine of stare decisis as "a universal inexorable command." **City of Memphis v. Overton**, 216 Tenn. 293, 298, 392 S.W.2d 98, 100 (1965) (quoting **Burnet v. Coronado Oil & Gas Co**., 285 U.S. 393, 405, 52 S.Ct. 443, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting)); *see also* **Alcazar v. Hayes**, 982 S.W.2d 845, 852 n. 5 (Tenn.1998). It is a rule of stability, not a rule of inflexibility. Powell, Stare Decisis, 16 J. Sup.Ct. Hist. at 14. Accordingly, we have cautioned on more than one occasion that "mindless obedience to the [doctrine of stare decisis] can confound the truth." ***Nye v.***

---

[1] Although not binding on this Court, we note that Appellee's attorney conceded, at oral argument, that the Pole Attachment Act was not applicable to MLGW.

***Bayer Cropscience, Inc.***, 347 S.W.3d at 696 n. 10 (quoting ***Davis v. Davis***, 657 S.W.2d 753, 758 (Tenn.1983)).

This Court should exercise its power to overrule prior decisions very sparingly and only when the reasons are compelling. ***Edingbourgh v. Sears, Roebuck & Co.***, 206 Tenn. 660, 664, 337 S.W.2d 13, 14 (1960). Nonetheless, we have a duty to reject principles of law that no longer work, ***State v. Kendricks***, 891 S.W.2d 597, 603 (Tenn.1994), and to correct plain and palpable errors even though they "may have been re-asserted and acquiesced in for a long number of years." ***Arnold v. Mayor & Aldermen of Knoxville***, 115 Tenn. 195, 202, 90 S.W. 469, 470 (1905) . . . .

This Court has observed that the doctrine of stare decisis should be "more rigidly followed" with regard to decisions construing statutes. ***Barnes v. Walker***, 191 Tenn. 364, 370, 234 S.W.2d 648, 650 (1950). However, there is no categorical rule that this Court's prior decisions construing statutes are binding on us in the same way they are binding on lower courts. *See* Powell, Stare Decisis, 16 J. Sup.Ct. Hist. at 16. Thus, when "cogent reasons" exist, this Court may and should revisit and either reverse or modify prior decisions construing statutes. *See* ***Monday v. Millsaps***, 197 Tenn. 295, 298, 271 S.W.2d 857, 858 (1954); ***Humphries v. Manhattan Sav. Bank & Trust Co***., 174 Tenn. 17, 25, 122 S.W.2d 446, 449 (1938). As we have noted in another case involving continuing adherence to an earlier decision construing a statute, "[o]ur oath is to do justice, not to perpetuate error." ***Jordan v. Baptist Three Rivers Hosp***., 984 S.W.2d 593, 599 (Tenn.1999) (quoting ***Montgomery v. Stephan***, 359 Mich. 33, 101 N.W.2d 227, 229 (1960)).

***Id***. at 650-51. Accordingly, we reverse our previous opinion in ***Gilliland I*** insofar as it holds that the Pole Act provisions are mandatory on MLGW. However, we leave undisturbed our holding that "MLGW had the right to condemn the [Appellants'] property . . . for the public purpose of providing utilities in that area." ***Gilliland I***, 391 S.W. 3d at 73.

In light of our erroneous holding in ***Gilliland I*** that the Pole Act required MLGW to allow co-location on its facilities, the trial court was bound by this decision on remand and, thus, denied Appellants' discovery on the question of MLGW's request for co-location rights in its petition for condemnation. As noted above, the questions of whether MLGW may grant these co-location rights and whether Appellants are entitled to additional compensation for these rights have not been properly considered, either in this Court or in the trial court. Because Appellants have had no opportunity to pursue discovery on these issues, we vacate the trial court's order for condemnation, appropriation, and possession to the extent that it grants MLGW co-location rights. Furthermore, because the question of value, if any, vis-à-vis the co-location rights has also not been properly considered, we also vacate the trial

court's order granting summary judgment in favor of MLGW. We affirm the trial court's condemnation, appropriation, and possession order to the extent that it grants MLGW an easement "for any and all purposes in connection with the construction, operation, improvement or maintenance of said electric system, gas system, or water system. . . ." Memphis City Charter § 684.

Having untied the trial court's hands on the co-location issue, we remand with instructions for the court to allow Appellants' the opportunity for discovery on this issue and for further hearing as the court may deem necessary and appropriate. Until such time as the trial court hears the parties' arguments and the evidence on the co-location rights, we conclude that Appellants' remaining issues are not ripe for adjudication and, thus, pretermit them. Although we take no position on whether MLGW should be allowed co-location rights in this case, nor any position on the value of these rights, we note that, in valuing a condemned property, a court should consider all "elements of value inherent in the property, including uses to which property was being put as well as uses to which the property was reasonably susceptible and which would add to market value thereof." *U.S. ex rel. Tenn. Valley Authority v. Indian Creek Marble Co.*, 40 F. Supp. 811(E.D. Tenn. 1941; *Love v. Smith*, 566 S.W.2d 876, 878 (Tenn. 1978) (" In determining what constitutes "fair cash market value" for eminent domain purposes, jury must consider all capabilities of the property and all legitimate uses for which it is available and reasonably adapted.") (citing *Nashville Housing Authority v. Cohen*, 541 S.W.2d 947, 950 (Tenn. 1976)).

## V. Conclusion

For the foregoing reasons, we vacate the trial court's order of condemnation, appropriation and possession insofar as it grants Appellee co-location rights; we affirm the order in all other respects. We also vacate the trial court's order granting summary judgment in favor of Appellee. The case is remanded with instructions for the trial court to allow discovery and proper hearing on the issues of whether Appellee is entitled to co-location rights and, if so, what compensation Appellants are due. The trial court may order further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the Appellee, City of Memphis, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE