IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 16, 2025 Session

## CITY OF PIGEON FORGE, TENNESSEE v. RLR INVESTMENTS, LLC

**Appeal from the Circuit Court for Sevier County**
**No. 15-CV-372-I     Carter S. Moore, Judge**

_____

### No. E2023-01802-COA-R3-CV

_____

In this condemnation action, the trial court entered an order of possession granting to the petitioner city two greenway easements and two construction easements over two tracts of land owned by the respondent corporation. In the order of possession, the court found that the city's taking was for the public purpose of the city's greenway project. The corporation filed two successive motions for summary judgment, claiming that because the taking was partially for a private purpose, it violated the Fifth Amendment Takings Clause of the United States Constitution and Article I, Section 21 of the Tennessee Constitution. The corporation averred that the order of possession required the city to construct parking spaces on one of the corporation's tracts to replace parking spaces taken from the other tract and that this would yield only a private benefit. The corporation also asserted that the city had abandoned its taking by failing to construct the replacement parking despite the completion of the greenway. The trial court denied both motions for summary judgment, determining that the order of possession had not required the city to build replacement parking and that no abandonment had occurred. Following a jury trial regarding compensation, the trial court entered a judgment approving the jury's monetary award to the corporation with prejudgment interest. The corporation has appealed. Discerning no reversible error, we affirm. We deny the corporation's request for an award of costs and attorney's fees on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

Gregory C. Logue, Knoxville, Tennessee, and Anthony C. White and Thomas M. Ritzert, Cleveland, Ohio, for the appellant, RLR Investments, LLC.

Brian R. Bibb, Knoxville, Tennessee, and Nathan D. Rowell, Sevierville, Tennessee, for the appellee, City of Pigeon Forge, Tennessee.

**OPINION**

I. Factual and Procedural Background

The petitioner, the City of Pigeon Forge ("the City"), filed a petition for condemnation on June 4, 2015, naming RLR Investments, LLC ("RLR"), and The Provident Bank as respondents. Relying on Tennessee's eminent domain statutory scheme, the City sought "to acquire certain property rights for greenway easement" along the Little Pigeon River and asserted that the property rights sought were for a public purpose. The petition involved two tracts of improved real property, both owned by RLR in fee simple. According to undisputed facts subsequently filed by RLR, the first tract is "a hotel property used as a private resort for RLR's employees" ("the Hotel Property"), and the second tract "is adjacent to the Hotel Property and contains a duplex, parking area, and open green space" ("the Duplex Property").[1] The City requested a permanent greenway easement traversing each tract, comprised of 2,138 square feet over the Hotel Property and 1,870 square feet over the Duplex Property. The City also requested a temporary construction easement consisting of 1,786 square feet over the Hotel Property and a temporary construction easement consisting of 5,210 square feet over the Duplex Property. The City stated that it had determined the amount to which the respondents would be entitled as compensation to be $131,450.00 and had deposited this amount with the trial court clerk.

On July 2, 2015, RLR filed an "Objection to the Right to Take and Answer," asserting that Tennessee's eminent domain statutory scheme did not authorize the City to condemn the property sought for use as a greenway. RLR also maintained that the amount deposited by the City with the court clerk was inadequate to compensate for the property if the petition were granted. The City subsequently amended its condemnation petition to add further statutory citations concerning eminent domain.

Regarding the procedure involved in an eminent domain action, Tennessee Code Annotated § 29-17-104(a)(2)(B) (West July 9, 2012, to current) provides that if the right to take is challenged in a timely filed answer, "the court shall promptly determine, as a matter of law, whether the condemner has the right to take the property or property rights sought to be condemned." The statute further provides: "If the court determines that the

---

[1] In naming The Provident Bank as a respondent, the City averred that RLR's interest in the Hotel Property was subject to an assignment of leases and rents held by The Provident Bank. However, the trial court subsequently entered an agreed order dismissing The Provident Bank from this action and noting that the lien the bank held had been released.

condemner has the right to take, the condemner shall thereupon have the right to take possession thereof." *Id.* The statute also provides for bifurcated proceedings, culminating in a trial addressing damages after the issue of possession has been determined. *See* Tenn. Code Ann. § 29-17-104(b) (West July 9, 2012, to current) ("When a condemner has the right to take possession of property or property rights, if necessary, the court shall issue a writ of possession to the sheriff of the county to put the condemner in possession. The writ may be issued prior to a trial on the damages.").

Following an evidentiary hearing, the trial court entered an "Order of Possession" in favor of the City on May 31, 2016, granting the requested easements.[2] Diagrams of the tracts with the respective easements noted were attached as collective "Exhibit A" to the Order of Possession. The court also incorporated a transcript of its findings made from the bench, wherein the court stated:

> The Court is satisfied that the city has carried its burden of proof that the Greenway project is for public purpose and convenience to the public, that it['s] [a] proper exercise of the eminent domain powers of the city; and the Court will grant the city possession.
>
> The princip[al] arguments revolve around certifications. The city says it has all applicable certifications in place. Any project, this one in particular because there are regulations that must be complied with, must be completed and finished in accordance with all applicable state, Federal regulations and the city's own ordinances. That's the city's burden. That's the city's responsibility as it would [be] if the city were simply building a sidewalk. The same principles apply, and it is the city's responsibility to carry out all its activity in accordance with those regulations. That does not, in the Court's opinion, have anything to do with the city's right to take and proceed.
>
> The Court has heard and I don't know the specific numbers, but a large number of tracts have already been taken on either end, either side of Tracts 4 and 5 and the Greenway's construction has been commenced on those properties. Th[ese are] the last remaining tracts within this project. In order to complete the project, which the Court finds is for a public purpose, the city needs these two tracts.
>
> Much of the arguments raised, particularly with respect to the parking lots, have to do with issues perhaps of damages, the amount of compensation.

---

[2] In the Order of Possession, the trial court noted that the City had withdrawn a request for a wastewater reuse easement that had been initially included in the City's petition.

The City recorded the Order of Possession with the Sevier County Register of Deeds on May 31, 2016.

RLR filed a timely motion to alter or amend the Order of Possession, stating expressly that the motion was filed pursuant to Tennessee Rule of Civil Procedure 59.04. In the heading of the motion, RLR also termed it a motion to "reconsider." RLR relied on the certification arguments described by the trial court above. The parties subsequently filed a joint notice stating that negotiations were ongoing and requesting that the trial court not set the Rule 59.04 motion for hearing. On January 8, 2018, the trial court entered an agreed order withdrawing RLR's motion to alter or amend.[3]

On May 30, 2018, RLR filed a motion to enforce the terms of the Order of Possession. RLR asserted that in accordance with the Order of Possession, the City had demolished RLR's six parking spaces on the Hotel Property to make way for the greenway. However, the City had not commenced construction of replacement parking spaces on the Duplex Property, which RLR claimed was required by the temporary construction easement granted over that tract in the Order of Possession. RLR alleged that the City was disregarding this portion of the order. RLR requested that the trial court "order the City to comply with the terms of the Order of Possession, including but not limited to, by constructing the replacement parking depicted in Exhibit A to the Order of Possession on the Duplex Property."

The City filed a response, denying that it had abandoned any portion of the property rights granted to it by the Order of Possession. The City alleged that RLR had "repeatedly stated that [the City] was substantially damaging its second tract of property by placing parking on it." The City further alleged that RLR had taken the position that the City had no right to construct the parking on the Duplex Property. The City stated that it had "determined that it would not construct the parking on [RLR's] adjoining lot because of the significant and continuing concerns raised by [RLR]." The City concomitantly filed a motion requesting that the trial court declare the parties' rights and responsibilities under the Order of Possession and "close[] the temporary construction easement originally granted for construction of the parking at issue." RLR filed a response, asserting that the City was attempting to unilaterally modify the Order of Possession.

Following a hearing conducted in July 2018, the trial court entered an order on September 4, 2018, finding that the greenway project had been completed, declaring that the "temporary construction easement at issue [was] terminated," and determining that

---

[3] Judge Richard R. Vance had been presiding over the case at the time the trial court entered the Order of Possession. Following Judge Vance's death in December 2017, this case was subsequently assigned to Judge Moore.

- 4 -

there had been "no abandonment of the project through the City not constructing replacement parking for the six (6) parking spaces taken from one of the lots owned by [RLR]." The court further determined:

> [T]he Court does not find that [the City] was specifically ordered to construct the parking at issue on property owned by [RLR], and the Court further does not find that to be for a public purpose. The Court finds that the public purpose in the taking at issue was construction of the Greenway itself.

On March 11, 2019, RLR filed a motion for summary judgment, alleging that (1) the City had partially abandoned its condemnation action and (2) the condemnation petition was "improperly based, in part, on taking of property not necessary nor for a proper public purpose." RLR also requested costs and fees pursuant to Tennessee Code Annotated § 29-17-912(b)(2)(B). The City filed a response on May 10, 2019, contending that RLR had filed its summary judgment motion improperly because the trial court had already ruled on the issues raised by RLR in the court's Order of Possession and in its September 2018 order. The City maintained that the proper vehicle for RLR to contest the Order of Possession had been the Rule 59.04 motion previously filed but that RLR had voluntarily withdrawn that motion. The City requested sanctions against RLR for the filing of a "baseless" summary judgment motion. RLR filed a reply, asserting that new facts had arisen since entry of the Order of Possession because during the July 2018 hearing, the City had admitted that the temporary construction easements were not for a public purpose because the replacement parking would have privately benefited RLR.

On June 17, 2019, the trial court conducted a hearing concerning RLR's summary judgment motion, as well as various discovery and pretrial motions. The court entered an order on October 15, 2019, and, as pertinent here, denied RLR's summary judgment motion. The court found that RLR's "request to dismiss [the City's] action because one of the temporary construction easements taken by [the City] was not for a public purpose" "would yield a draconian result." The court attached the entire hearing transcript to its order and incorporated its findings of fact and conclusions of law rendered from the bench. These findings and conclusions as to the summary judgment motion were:

> The Court finds that the Court's going to side with the City of Pigeon Forge in this matter. Regardless of whether it was improper or not to have – to construct a parking lot, because I don't think anybody's arguing that it was proper. If that was the City's position, that was known from the onset of this matter. The greenway itself is finished at this point. At this juncture, the Court's not going to cause an – and you're saying there is no parade of horribles. There may not be, but I've seen – I've been surprised. So, I mean, if I were to turn this over and give [RLR] possession of the greenway right

now, it would be theirs and they could do what they want with it until the City filed something, and I don't think that's appropriate.

And I want [RLR] to be compensated to the fullest, which they're going to have [an] opportunity to do whether this settles or we go to trial on it. Because, I mean, the City will have to pay [RLR] for the property the greenway's on, for taking the property that the greenway is – or the greenway is not on, for the time period they took it and any incidental damages. So for that reason, [RLR's] motion for summary judgment is dismissed.

After various proceedings related to the upcoming trial regarding damages compensation, RLR filed a "Renewed Motion for Summary Judgment" on April 29, 2022. In its renewed motion, RLR elucidated the same bases for summary judgment as stated in its initial motion. RLR attached depositions from March 2022 that it had not previously filed, one given by Earlene Teaster, City Manager for the City, and the other by Lanny Goodwin, the Director of Parks and Recreation for the City. RLR averred that Ms. Teaster's testimony supported the position that it was an improper use of eminent domain power to take private property to create parking spaces that would benefit other private property. RLR posited that Mr. Goodwin's testimony indicated that the City had included replacement parking within its grant submission materials to obtain funds for the greenway project and then had not constructed the replacement parking.

The City filed a response opposing RLR's renewed summary judgment motion on June 22, 2022, arguing that RLR was seeking "judgment as a matter of law on the same legal grounds and with the same justifications that were rejected on at least three previous occasions." The City requested costs and attorney's fees to compensate it for defending against what it termed a frivolous motion. The City attached to its response, *inter alia*, a copy of its "Greenway Plan and Profile" and an excerpt from a deposition given by RLR's Director of Properties, Mark P. Sherman, in April 2022. Mr. Sherman had testified that RLR desired replacement parking but "not on the duplex tract necessarily." Mr. Sherman clarified that he did not want replacement parking that limited RLR's use of the Duplex Property.

On June 29, 2022, the trial court conducted a hearing on RLR's renewed motion for summary judgment, as well as pretrial motions concerning the damages trial. In an order entered on July 26, 2022, the court denied RLR's renewed summary judgment motion upon determining that "the property interests sought in the Petition for Condemnation were for a proper public purpose" and that the City had "not abandoned any of the interests it was granted in the May 31, 2016 Order of Possession." The court stated that it was relying on its findings in the Order of Possession, the September 2018 order terminating the

construction easement over the Duplex Property, and the October 2019 order denying RLR's initial summary judgment motion.

On August 9, 2022, RLR filed a motion requesting permission for interlocutory appeal, pursuant to Tennessee Rule of Appellate Procedure 9, which the City opposed. In an order entered on December 2, 2022, the trial court granted RLR's motion, stating that the "central disputed issues" were "whether the City of Pigeon Forge abandoned a part of the taking in this action, and whether the City of Pigeon Forge engaged in an unlawful private taking of a portion of the property owned by RLR." However, this Court denied RLR's Rule 9 application in an order entered on January 23, 2023. RLR then filed a Rule 9 application with the Tennessee Supreme Court, which the Supreme Court denied in an order entered on April 17, 2023.

Following various pretrial evidentiary matters, the trial court tried the compensation portion of the case before a jury on November 13 to 16, 2023.[4] The trial court entered an "Order of Judgment" on December 6, 2023, approving the jury's verdict regarding compensation due to RLR. The court detailed the judgment as follows:

> The jury gave a judgment in the amount of $276,931.62 finding just compensation for the fair cash value of the land taken to be $131,511.87 and incidental damages due to the landowner to be $145,419.75. The jury credited $0.00 for special benefits. Further, pursuant to the terms of Tenn. Code Ann. § 29-17-913, [RLR] is awarded prejudgment interest at the rate of 5.5% on the amount of the judgment in excess of that on deposit with the Clerk of Court equal to $59,978.29 through November 27, 2023 and an additional $21.92 per day between November 27, 2023 and the date of entry of this Order.

RLR timely appealed, raising issues concerning the trial court's entry of the Order of Possession and denial of RLR's summary judgment motions. Neither party has raised an issue regarding the jury verdict and compensation awarded to RLR. On January 5, 2024, the trial court entered an agreed order directing the trial court clerk to invest the funds deposited with the clerk in an interest-bearing account. The court noted that the City had deposited a total judgment amount of $337,107.19, which included the interest awarded.

---

[4] Prior to trial, RLR filed a complaint in the United States District Court for the Eastern District of Tennessee, wherein RLR contended that the Order of Possession violated the Fifth Amendment of the United States Constitution. The federal district court held that it lacked subject matter jurisdiction to review the state court order, and the United States Sixth Circuit Court of Appeals affirmed. *See RLR Invs., LLC v. City of Pigeon Forge, Tenn.*, 4 F.4th 380, 388 (6th Cir. 2021) ("By asking a federal court to declare a state-court order unconstitutional and prevent its enforcement, RLR impermissibly appealed the state court's order to the federal district court.").

## II. Issues Presented

RLR presents two issues on appeal, which we have restated slightly as follows:

1.      Whether the trial court erred by determining that the City's plan to take private property to construct private parking spaces for RLR's exclusive use and benefit was constitutional.

2.      Whether the trial court erred by allowing the City to abandon its interest in the construction easement granted in the Order of Possession without providing RLR the statutory costs and fees.

The City has raised three additional issues, which we have similarly restated:[5]

3.      Whether the trial court erred by declining to reconsider its prior rulings, and whether RLR has waived consideration on appeal of the trial court's prior rulings by failing to properly preserve the record.

4.      Whether the trial court properly determined that the grant of property interests to the City in the Order of Possession was supported by a constitutionally sufficient public purpose.

5.      Whether the trial court properly determined that the City had not abandoned its condemnation action.

## III. Standard of Review

In this bifurcated action, the issues raised on appeal concern the trial court's finding that the City was properly exercising the power of eminent domain and the trial court's denial of RLR's motions for summary judgment. Whether the power of eminent domain has been exercised properly is a question of law, which we review "de novo with no

---

[5] The City also raises a fourth issue regarding whether RLR waived all issues on appeal by failing to properly cite to the record. *See* Tenn. R. App. P. 27(a) (6)-(7) (requiring "appropriate references to the record" in the statement of facts and argument sections of an appellant's brief); Tenn. Ct. App. R. 6(b) (providing that "[n]o complaint of or reliance upon action by the trial court" and "[n]o assertion of fact" will be considered on appeal without specific references to the record). In its principal brief, RLR repeatedly cited to an appendix that was not included with the brief rather than to the appellate record. However, two days after the City filed its responsive brief, RLR filed an unopposed motion requesting that it be allowed to file a "corrected brief." This Court granted the motion, and in RLR's corrected brief, the citations to a phantom appendix have been substituted with appropriate citations to the record. The City's issue concerning RLR's record citations is therefore pretermitted as moot.

presumption of correctness afforded the trial court's conclusions." *Metro. Gov't of Nashville & Davidson Cnty. v. Allen Family Trust*, No. M2008-00886-COA-R3-CV, 2009 WL 837731, at *4 (Tenn. Ct. App. Mar. 27, 2009) (citing *Pickler v. Parr*, 138 S.W.3d 210, 213 (Tenn. Ct. App. 2003)).

The grant or denial of a motion for summary judgment is likewise a matter of law, which we review *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

> [W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* [*v. Zenith Radio Corp.*], 475 U.S. [574,] 586, 106 S. Ct. 1348 [(1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary

judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65. Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014). "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019) (quoting *Rye*, 477 S.W.3d at 265).

## IV. Trial Court's Prior Rulings

The City asserts that on appeal, RLR "specifically challenges only the Trial Court's entry of the Order of Possession and denial of its April 29, 2022 Motion for Summary Judgment." The City cites this statement in RLR's principal brief:

> Upon entering the final order of judgment incorporating [the jury's] verdict, the interlocutory judgments of the Trial Court were made final and appealable, including its decisions to grant the Order of Possession and deny RLR's Motion for Summary Judgment on the ground that the taking was for a public purpose and that the City did not improperly abandon its taking. As a matter of right, RLR now appeals these determinations.

The City further asserts that RLR made the "curious choice" not to challenge the September 2018 order wherein the trial court denied RLR's motion to enforce the terms of the Order of Possession, declared the construction easement over the Duplex Property to be terminated, and found that no abandonment had been committed by the City. Upon careful

review, we disagree with the City's characterization of RLR's challenge to the trial court's rulings.

To delineate the pertinent procedural history, the trial court entered the May 2016 Order of Possession upon determining that the greenway project was for a public purpose and that it constituted a proper exercise of the City's eminent domain authority. RLR timely filed a Rule 59.04 motion to alter or amend, which was subsequently withdrawn by agreement of the parties. In May 2018, RLR filed its motion to enforce the Order of Possession, arguing for the first time that the City had abandoned the construction easement over the Duplex Property, and thus had partially abandoned the condemnation proceeding, by failing to construct replacement parking. In its September 2018 order, the trial court denied RLR's motion to enforce upon determining that (1) the Order of Possession had not required the construction of replacement parking, (2) the greenway project had been completed, and (3) the City had not abandoned its condemnation proceedings. The court declared the construction easement at issue to be terminated.

RLR filed its first motion for summary judgment in March 2019 on the bases of partial abandonment and an improper private purpose for a portion of the condemnation action. In its October 2019 order, the trial court denied RLR's first summary judgment motion, emphasizing its previous finding that the greenway project had been completed. RLR filed its renewed motion for summary judgment in April 2022, arguing the same bases for summary judgment but attaching new deposition testimonies that had been given by City officials. In July 2022, the court entered its order denying the renewed summary judgment motion, reiterating its determinations that the property interests sought by the City were for "a proper public purpose" and that no abandonment had occurred.

The trial court expressly stated in its July 2022 order denying the renewed summary judgment motion that it was relying upon and incorporating its findings from (1) the May 2016 Order of Possession, (2) the September 2018 order denying the motion to enforce and declaring the construction easement over the Duplex Property terminated, and (3) the October 2019 order denying the first summary judgment motion. Therefore, we determine that the court's findings in these prior rulings are properly reviewable as part of the court's findings in the July 2022 order. *See, e.g.*, *State ex rel. Harman v. Trinity Indus.*, No. M2022-00167-COA-R3-CV, 2023 WL 3959887, at *7 (Tenn. Ct. App. June 13, 2023) (rejecting the appellant's argument that the trial court had improperly incorporated findings from a prior dismissal order by reference into its final order of dismissal when the prior order was contained in the record). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court was required to "state the legal grounds upon which the court denie[d] or grant[ed]" the summary judgment motion. Here, the trial court satisfied this requirement in part by incorporating its prior rulings. We therefore determine that in raising issues

concerning the trial court's findings in the July 2022 order, RLR sufficiently challenged the court's findings on those issues in the court's prior incorporated rulings as well.

As an additional procedural argument, the City contends that although the Order of Possession was an interlocutory order, it "constitute[d] a final decision on the merits of the first stage of the bifurcated proceedings" and should have been challenged via a Tennessee Rule of Civil Procedure 59.04 motion to alter or amend within thirty days of the order's entry. While not overtly arguing that RLR's motions for summary judgment were untimely challenges to the Order of Possession, the City does argue that this Court should treat the renewed motion for summary judgment as a motion to alter or amend and thus review the trial court's decision to deny the motion under an abuse of discretion standard. *See Stricklin v. Stricklin*, 490 S.W.3d 8, 11 (Tenn. Ct. App. 2015) ("On appeal, we review a trial court's decision regarding a motion to alter or amend a judgment under an abuse of discretion standard.").

RLR responds that "[w]hile a Rule 59.04 motion may be used to challenge an Order of Possession, it is not the exclusive manner in which a party can challenge the trial court's judgment." RLR posits that a possession order could be challenged at any point prior to entry of the final order in a condemnation proceeding. We agree with RLR on this point. This Court has determined that despite the bifurcated nature of condemnation proceedings, an order of possession may not be declared a final order under Tennessee Rule of Civil Procedure 54.02 because a possession order does not "dispose of an entire claim or party as required by that rule." *See Town of Collierville v. Norfolk S. Ry. Co.*, 1 S.W.3d 68, 70 (Tenn. Ct. App. 1998). In *Collierville*, the plaintiff town sought easements over railroad tracks via eminent domain. 1 S.W.3d at 69. The trial court granted orders of possession to the town after conducting a hearing based on the parties' pleadings and affidavits but without conducting an evidentiary hearing. *Id.* The court certified the orders of possession as final, pursuant to Rule 54.02, and the defendant railway company appealed, arguing that the trial court had erred by failing to conduct an evidentiary hearing. *Id.* Determining that the possessory order could not be considered final due to the outstanding issue of damages, this Court elected to treat the appeal as interlocutory, pursuant to Tennessee Rule of Appellate Procedure 9, in the interest of judicial economy. *Id.* at 71; *see also Alcoa Dev. & Hous. Auth. v. Monday*, No. 196, 1991 WL 12291, at *1 (Tenn. Ct. App. Feb. 7, 1991) (determining that the trial court improperly certified an order of possession as final under Rule 54.02 and treating the appeal as interlocutory).

In support of its argument that the trial court's denial of RLR's renewed summary judgment motion should be treated as a denial of a Rule 59.04 motion to alter or amend, the City relies on this Court's decision in *Metro. Dev. & Hous. Agency v. Eaton*, 216 S.W.3d 327 (Tenn. Ct. App. 2006). In *Eaton*, the defendant landowners attempted to perfect an interlocutory appeal and then an extraordinary appeal from the trial court's

possession order that had vested title over the landowners' property to the plaintiff agency via eminent domain. *Eaton*, 216 S.W.3d at 334. The trial court denied the landowners' application for an interlocutory appeal, filed pursuant to Tennessee Rule of Appellate Procedure 9, and this Court denied the landowners' application for an extraordinary appeal, filed pursuant to Tennessee Rule of Appellate Procedure 10. *Id.* Upon the agency's subsequent motion to alter or amend, the trial court amended the possession order to add provisions based on redevelopment plan objectives that had been submitted by the agency and that the landowners objected to as infringing on their property development rights. *Id.* at 334-35. After the trial court had entered a final judgment approving a jury verdict awarding damages to the landowners, and approximately four years after entry of the original possession order, the landowners filed a Rule 59.04 motion to alter or amend the trial court's judgment, challenging both the original and the amended possession orders. *Id.* at 329-31. Upon the trial court's denial of the landowners' Rule 59.04 motion, the landowners appealed to this Court. *Id.* at 329. Determining that in the Rule 59.04 motion, the landowners had "simply sought to relitigate matters that had already been adjudicated," this Court concluded that the trial court had not abused its discretion by denying the motion. *Id.* at 343.

Here, the City states that the *Eaton* Court "analyzed [the landowners'] motions to reconsider prior rulings under Tenn. R. Civ. P. 59" with an abuse of discretion standard. The City urges that this Court should conclude that any motion for summary judgment filed by RLR "after adjudication of the Order of Possession was, in substance, a motion to alter or amend subject to the standards of Rule 59.04." We disagree. We find *Eaton* to be procedurally distinguishable from the instant action. The *Eaton* landowners appealed from the trial court's denial of a Rule 59.04 motion, necessitating appellate review under the discretionary standard provided by that rule. *See Eaton*, 216 S.W.3d at 343. Here, the trial court treated RLR's "renewed" summary judgment motion as a motion for summary judgment and not as a motion to alter or amend the Order of Possession.

In a pretrial hearing conducted on September 5, 2023, the City's counsel announced that two of the City's motions *in limine* were unopposed, stating the following:

> The first two basically was just to confine at the trial the issue of valuation. There will be no proof on public use or public purpose, no proof on abandonment. The City understands RLR has asserted those arguments. Those are preserved for appeal. We expect those to be litigated after trial.

RLR's counsel agreed that the issues of public use and abandonment would not be presented at trial. The court then stated:

I've read the motions and the responses. That makes sense. I mean, I ruled on those. That's for me, not the jury. And they absolutely have the right to raise that on appeal if it goes that far. But I don't think it's appropriate for jury trial. But their rights need preserved. So we're all in one accord on that.

Counsel for both parties agreed with no objection voiced by the City concerning RLR's right to appeal the trial court's prior rulings on the issues of public use and abandonment.

The culmination of those prior rulings was the trial court's denial of RLR's renewed motion for summary judgment, which included the incorporation of the court's findings in the Order of Possession, the order denying RLR's motion to enforce, and the order denying RLR's first summary judgment motion. The renewed summary judgment motion was based in part on facts not in evidence at the time of the condemnation hearing, namely the City's decision not to construct replacement parking and the deposition testimonies given by Ms. Teaster and Mr. Goodwin. We discern no error in the trial court's treatment of the renewed motion as one for summary judgment. Accordingly, we will review the trial court's denial of the motion under the summary judgment standard of review. The City is not entitled to relief on this issue.

## V. Preservation of Condemnation Hearing Record

Regarding appellate review of the Order of Possession, the City contends that because RLR has failed to provide a full transcript of the April 21, 2016 evidentiary hearing concerning the condemnation petition, this Court must presume that the trial court's findings in the Order of Possession were correct. In its reply brief, RLR counters that the transcript attached by the trial court to the Order of Possession was sufficient for appellate review. However, the excerpt from the hearing transcript attached to the Order of Possession is limited to the trial court's findings of fact and conclusions of law. No transcript of the evidentiary portion of the April 2016 hearing is in the record.

Tennessee Rule of Appellate Procedure 24(b) provides in pertinent part:

[I]f a stenographic report or other contemporaneously recorded, substantially verbatim recital of the evidence or proceedings is available, the appellant shall have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal.

Rule 24(b) further provides that if less than the entire transcript is to be included,

- 14 -

the appellant shall, within 15 days after filing the notice of appeal, file with the clerk of the trial court and serve on the appellee a description of the parts of the transcript the appellant intends to include in the record, accompanied by a short and plain declaration of the issues the appellant intends to present on appeal.

Under Rule 24(b), the appellee may then designate additional parts of the transcript to be included, and the appellant shall either include those parts at its own expense or request that the trial court require the appellee to pay the expense. When no transcript is available, Rule 24(c) provides that the appellant may prepare a statement of the evidence that "should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." When no transcript or statement of the evidence has been provided, we must presume that the record would have supported the trial court's findings. *See Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992) ("This court cannot review the facts de novo without an appellate record containing the facts, and therefore, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings.").

In its designation of the record on appeal, RLR included transcripts of several hearings, including the hearings addressing RLR's two motions for summary judgment. However, RLR did not designate the transcript of the April 2016 hearing for inclusion in the record. In its subsequent designation of additional materials to be included, the City also did not designate the April 2016 hearing transcript. The transcript attached to and incorporated into the Order of Possession begins with the trial court's findings of fact, specifically with the following statement: "The Court's listened very carefully today and previously when we had some arguments on this." The record contains no transcript or statement of the evidence describing what the court heard before making its findings of fact. The trial court stated in the Order of Possession that it had reached its decision upon consideration of the City's condemnation petition and RLR's objection and answer, as well as "testimony of witnesses, statements of counsel, and the entire record." In its ruling, the trial court summarized the arguments presented during the hearing as related to certifications for the greenway project, construction of the greenway project that had begun on other properties, and damages for the property proposed to be taken from RLR.

Without a transcript or statement of the evidence describing the testimonies and arguments, we must presume that the record of the evidentiary portion of the hearing, had it been fully preserved, would have supported the trial court's factual findings. *See Sherrod*, 849 S.W.2d at 783. However, because the proper exercise of the power of eminent domain is a matter of law, we will review the trial court's conclusions of law in the Order of Possession *de novo* with no presumption of correctness. *See Allen Family Trust*, 2009 WL 837731, at *4.

## VI. Constitutionality of the Order of Possession

RLR advances the position that the temporary construction easement across the Duplex Property was unconstitutional because the City had planned to construct replacement parking that would have been for the private benefit of RLR as the owner of the Motel Property. RLR urges that because a portion of the City's taking was purportedly for a private purpose, this Court should reverse the entire Order of Possession as unconstitutional. The City counters that the trial court properly found that the Order of Possession did not require the City to build replacement parking on the Duplex Property and that because the greenway project was completed by July 2018, the construction easement traversing the Duplex Property had terminated with the greenway's completion.[6] The City also postulates that if this Court were to find that the Order of Possession included a plan for replacement parking, such a private benefit to RLR would have been incidental to the overarching public purpose of the greenway project. Upon careful review, we agree with the trial court's finding that the Order of Possession did not require the City to build replacement parking on the Duplex Property. Moreover, we conclude that the Order of Possession did not violate the United States Constitution or Tennessee Constitution because it was entered for the public purpose of the greenway project.

Tennessee Code Annotated § 29-17-102(1) (West May 28, 2024, to current) provides:

> "Eminent domain" means the authority conferred upon the government, and those entities to whom the government delegates such authority, to condemn and take, in whole or in part, the private property of another, so long as the property is taken for a legitimate public use in accordance with the fifth and fourteenth amendments to the United States Constitution, the Constitution of Tennessee, Art. I, § 21, and chapter 863 of the Public Acts of 2006[.]

The "Takings Clause" of the Fifth Amendment to the United States Constitution establishes that private property shall not "be taken for public use, without just compensation." It is made applicable to the states by the Fourteenth Amendment. *See Kelo v. City of New*

---

[6] As a preliminary matter, the City contends that "the issue of replacement parking" is moot because the parking was "never prayed for, ordered or built" and because RLR was "fully compensated for the inconvenience of the temporary construction easement on both tracts by the jury verdict on just compensation." *See Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely*, 182 S.W.3d 333, 338 (Tenn. Ct. App. 2005) ("A case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party."). Here, RLR has requested the relief of a reversal of the Order of Possession, which was an interlocutory order in this case and could be reversed if this Court were to determine that the City's taking had been unconstitutional. Because RLR could be provided some sort of judicial relief, the City's mootness argument is unavailing.

*London, Conn.*, 545 U.S. 469, 472 n.1 (2005). Article I, § 21 of the Tennessee Constitution provides that "no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor."

The version of Tennessee Code Annotated § 29-17-102(2) (West July 9, 2012, to May 17, 2017) in effect when the condemnation petition was filed provided, in relevant part, the following definition of "public use":

> "Public use" shall not include either private use or benefit, or the indirect public benefits resulting from private economic development and private commercial enterprise, including increased tax revenue and increased employment opportunity, except as follows:
>
> (A)     The acquisition of any interest in land necessary for a road, highway, bridge, or other structure, facility, or project used for public transportation;
>
> * * *
>
> (D)     Private use that is merely incidental to a public use, so long as no land is condemned or taken primarily for the purpose of conveying or permitting the incidental private use.

As this Court has explained:

> Tennessee courts have long held that "the power of eminent domain is against common right and all grants of such power are to be construed strictly against the condemner and liberally in favor of the rights of property." *Vinson v. Nashville, Chattanooga & St. Louis Ry.*, 45 Tenn. App. 161, 321 S.W.2d 841, 844 (1959). "Of course the power of eminent domain is to be strictly construed and the procedure prescribed by statute must be followed." *Id.* at 844. "[T]he courts have the right and duty to determine the existence of authority to take, the existence of legitimate public use and related questions." *Duck River Elec. Membership Corp. v. City of Manchester*, 529 S.W.2d 202, 204 (Tenn. 1975). In *Pickler v. Parr*, 138 S.W.3d 210, 213 (Tenn. Ct. App. 2003), *perm. app. denied* (Tenn. March 8, 2004), this Court explained "the well-traveled analysis of the government's right to take." The *Pickler* Court employed a multi-step test to determine whether a taking is appropriate. *Id.* at 213. The first step is to determine whether the condemning authority has the right to take. *Id.* The second step in the

- 17 -

analysis is to determine whether the taking is for public or private use. *Id.* If these questions are resolved in favor of the condemning authority, the authority's determination as to the need for the property is "conclusive upon the courts" unless the opponent to the taking establishes "a clear and palpable abuse of power, or fraudulent, arbitrary or capricious action." *Id.* (quoting *Maryville v. Edmondson*, 931 S.W.2d 932, 935 (Tenn. Ct. App. 1996), *perm. app. denied* (Tenn. July 8, 1996)).

Although the determination of whether private property is being taken for a public use is a judicial question, "'all other incidents of the taking are political questions, for the determination of the sovereign, and not judicial questions, for the determination of the courts.'" *City of Knoxville v. Heth*, 186 Tenn. 321, 210 S.W.2d 326, 331 (1948) (quoting *Southern Ry. Co. v. Memphis*, 126 Tenn. 267, 148 S.W. 662, 665 (1912)). Deciding which property shall be taken, "'determining its suitableness for the use to which it is proposed . . . as well as deciding the quantity required, are all political questions, which inhere in and constitute the chief value of the power to take.'" *Id.* A municipality's determination of "the necessity for the taking is not a question for resolution by the judiciary and, absent a clear and palpable abuse of power, or fraudulent, arbitrary or capricious action, it is conclusive upon the courts." *Duck River*, 529 S.W.2d at 204. In the context of eminent domain, a taking is arbitrary and capricious if it "can be characterized as a 'willful and unreasonable action without consideration or in disregard of facts or law or without determining principle.'" *City of Chattanooga v. Classic Refinery*, No. 03A01-9712-CV-00552, 1998 WL 881862, at *6 (Tenn. Ct. App. Dec. 17, 1998) (quoting *Black's Law Dictionary* 105 (6th ed. 1990)).

*City of Memphis v. Tandy J. Gilliland Family, LLC.*, 391 S.W.3d 60, 67-68 (Tenn. Ct. App. 2012).

In this case, RLR does not question the City's authority to take private property for a public purpose through its ordinance powers. *See* Tenn. Code Ann. § 6-19-101(9) (West May 25, 2017, to current) (stating that incorporated cities may "[c]ondemn property, real or personal or any easement, interest, or estate or use therein, either within or without the city, for present or future public use"). RLR's argument focuses on the second step in the *Pickler* analysis: whether the taking is for public or private use. *See City of Memphis*, 391 S.W.3d at 67 (citing *Pickler v. Parr*, 138 S.W.3d 210, 213 (Tenn. Ct. App. 2003)). While acknowledging that the greenway project itself was for a legitimate public purpose, RLR asserts that the construction easement over the Duplex Property was for a private purpose and therefore rendered the entire Order of Possession unconstitutional.

As noted previously, the trial court expressly relied on its findings from the May 2016 Order of Possession, the September 2018 order denying the motion to enforce, and the October 2019 order denying the first summary judgment motion in its order denying RLR's renewed motion for summary judgment. In the September 2018 order, the trial court elucidated:

> That the Court does not find that [the City] was specifically ordered to construct the parking at issue on property owned by [RLR], and the Court further does not find that to be for a public purpose. The Court finds that the public purpose in the taking at issue was construction of the Greenway itself.

> That the Court finds the project at issue, the Greenway, to be completed and finds that the temporary construction easement at issue is terminated.

(Paragraph numbering omitted.) The court agreed with RLR's position that construction of "the parking at issue on property owned by [RLR]" would not have been for a public purpose. However, the court simultaneously found that the Order of Possession had not included a specific order that the City build the replacement parking. The court declared the "temporary construction easement at issue" to be terminated with the completion of the greenway project, which the court reiterated was for a public purpose.

Indeed, the Order of Possession contains no mention of construction of replacement parking spaces. RLR maintains that the diagram of the Duplex Property attached to the Order of Possession set out the replacement parking and that therefore the order required the City to construct the parking.[7] In its reply brief on appeal, RLR has circled an area on the diagram that includes lines drawn that could indicate parking spaces between the "Construction Easement" and "New Area." However, these lines are not labeled in any way, and the term, "parking," appears nowhere on the diagram. RLR also propounds that the size of the construction easement on the Duplex Property—5,210 square feet as compared to 1,786 square feet on the Hotel Property—would indicate that it was intended to include the replacement parking. Although RLR's assertion on this point may be true, the fact remains that the Order of Possession contains no directive that the City construct replacement parking on the Duplex Property.

In the Order of Possession, the trial court found that the City was "entitled to the Permanent Greenway Easements and the Temporary Construction Easements sought in the Petition." Regarding the Duplex Property, the City requested in the petition that the

---

[7] We have attached a copy of the Duplex Property diagram, as it appears within the collective exhibit to the Order of Possession, to this Opinion.

- 19 -

permanent easement be "[g]ranted together with a temporary construction easement 10-feet outside of the construction area, containing a total of 5,210 square feet."  The petition did not mention the construction of a parking area.  Having thoroughly reviewed the Order of Possession and the record as a whole, we determine that the Order of Possession did not require the City to construct replacement parking.  Given that there is no dispute concerning the public purpose of the greenway project, we affirm the trial court's finding that the City's taking was for a public purpose.

RLR contends that despite the jury verdict awarding compensation to RLR for the City's taking, RLR has still sustained an uncompensated injury because the City has not filed a release of the construction easement over the Duplex Property "on the title record."  However, within the Order of Possession, the description of the easements for each tract includes a provision stating:  "The temporary construction easement shall expire upon the completion of construction as it pertains to this tract."  In its September 2018 order, the trial court determined that the temporary construction easement on the Duplex Property was terminated.  With this order, both parties had notice that the construction easement had been terminated.  As the City states in its appellate brief, the City's "right to enter was terminated by the Trial Court by order entered September 4, 2018 at the close of construction."  According to the provision set forth in the Duplex Property description within the Order of Possession, the temporary construction easement over the Duplex Property expired "upon the completion of construction as it pertains to this tract."  We interpret this to mean that upon the trial court's declaration that the construction had been completed, the construction easement was terminated.  *See, e.g.*, *Cellco P'ship v. Shelby Cnty.*, 172 S.W.3d 574, 582 (Tenn. Ct. App. 2005) (noting that according to the provision of a deed, a temporary construction easement would "expire and terminate upon installation of easement improvements or three (3) years from the date of this instrument whichever comes first.").  The trial court's September 2018 order is a matter of public record, easily ascertainable by anyone seeking to discover the status of the construction easements over RLR's property.

To the extent that RLR relies on what it terms "judicial admissions" of the City's former counsel and the 2022 deposition testimonies of city officials to establish that replacement parking was part of the City's initial plan for the Duplex Property, we find such reliance unavailing.  During the July 2018 hearing that led to the September 2018 order, the City's counsel stated the following concerning replacement parking:

This is parking on private land that does not benefit the public purpose of the greenway.

So we believe that RLR got it right when they were complaining, your Honor, that we should not be burdening their other lot with this parking.  So

the city reconsidered its position and changed its plans in relation to [the] greenway. And I think the city has that right, your Honor, in terms of modifying plans.

Counsel's statement aligns with the trial court's conclusion in the September 2018 order that replacement parking would have been for a private purpose. Although the statement indicates that the City initially had planned to construct the parking, this fact in no way affects the trial court's legal conclusion that replacement parking simply was not required by the Order of Possession. *See Old Hickory Coaches, LLC v. Star Coach Rentals, Inc.*, 652 S.W.3d 802, 814 (Tenn. Ct. App. 2021) ("[J]udicial admissions of fact must be deliberate and clear, while legal conclusions are rarely considered to be binding judicial admissions." (quoting *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007))).

Likewise, the deposition testimonies of Ms. Teaster (City Manager) and Mr. Goodwin (Director of Parks and Recreation) indicated that the City initially planned to build replacement parking on the Duplex Property. When questioned regarding whether such parking would have been for the private use of RLR, Ms. Teaster answered in the affirmative. However, these deposition testimonies, taken nearly six years after the Order of Possession had been entered, do not establish the content of the Order of Possession. As noted in a previous section of this Opinion, the only transcript in the record for the evidentiary hearing leading to the May 2016 entry of the Order of Possession is the memorandum opinion incorporated into the order. This memorandum opinion includes the trial court's findings of fact and conclusions of law, but it does not contain any transcription of the evidentiary hearing leading to those findings and conclusions. We must therefore presume that the record of the evidentiary portion of the hearing, if it had been fully preserved, would have supported the trial court's factual findings. *See Sherrod*, 849 S.W.2d at 783.

Accordingly, we determine that the trial court's Order of Possession, which contains no mention of replacement parking as part of the construction easement across the Duplex Property, must be presumed accurate as to the scope of the City's taking of RLR's property. Having determined, as a matter of law, that the Order of Possession did not include a directive to the City to construct replacement parking, we decline to address the City's alternate argument that the private benefit of replacement parking would have been incidental to the overall public purpose of the greenway project. *See* Tenn. Code Ann. § 29-17-102(2)(D).

Finally, we discern no "clear and palpable abuse of power, or fraudulent, arbitrary or capricious action" that would render the City's taking in this condemnation action unconstitutional. *See City of Memphis*, 391 S.W.3d at 68 (quoting *Duck River Elec.*

*Membership Corp. v. City of Manchester*, 529 S.W.2d 202, 204 (Tenn. 1975)). We therefore conclude that the Order of Possession did not violate precepts of the United States Constitution or the Tennessee Constitution. Thus, we affirm the Order of Possession, as well as the trial court's subsequent rulings confirming the scope of the Order of Possession, including the court's order denying RLR's renewed motion for summary judgment.

## VII. Abandonment

RLR contends that the trial court erred by allowing the City to abandon its interest in the construction easement over the Duplex Property without awarding to RLR statutory costs and fees pursuant to Tennessee Code Annotated § 29-17-912(b)(1). Based on the same statutory provision, RLR requests an award of costs and attorney's fees on appeal. Tennessee Code Annotated § 29-17-912(b)(1) (West May 18, 2017, to current) provides:

> Notwithstanding subsection (a) [regarding the amount of compensation awarded at trial], the state court having jurisdiction of a proceeding initiated by any person, agency or other entity to acquire real property for the purpose of a public utility or for a road, highway, bridge, or other structure, facility, or project used for public transportation by condemnation shall tax the bill of costs prepared by the clerk against the condemner and shall award the owner of any right, or title to, or interest in, such real property such sum as will in the opinion of the court reimburse such owner for the owner's reasonable disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of condemnation proceedings, only if:
>
> (A)    The final judgment is that the acquiring party cannot acquire the real property by condemnation; or
>
> (B)    <u>The proceeding is abandoned by the acquiring party</u>.

(Emphasis added.) "This Court has held that to constitute an abandonment under this section, there must be 'a voluntary act by the condemning authority.'" *Knox Cnty. ex rel. Schumpert v. Union Livestock Yard, Inc.*, 59 S.W.3d 158, 164 (Tenn. Ct. App. 2001) (quoting *Metro. Gov't of Nashville & Davidson Cnty. v. Denson*, No. 01A01-005-CV-00174, 1990 WL 154646, at *9 (Tenn. Ct. App. Oct. 17, 1990)).

Inasmuch as we have concluded that the Order of Possession did not require the City to construct replacement parking as part of the construction easement over the Duplex Property, we determine the issue of abandonment to be pretermitted as moot because RLR's argument is grounded in its assertion that the City failed to construct the

replacement parking.  Moreover, we agree with the City's point that it has not abandoned this condemnation proceeding at any point during the pendency of the action.  *See* Tenn. Code Ann. § 29-17-912(b)(1)(B).  Accordingly, we deny RLR's request for a statutory award of costs and attorney's fees on appeal.

## VIII.  Conclusion

For the foregoing reasons, we affirm the trial court's judgment.  We deny RLR's request for an award of costs and attorney's fees on appeal.  We remand this matter to the trial court for enforcement of the judgment and collection of costs assessed below.  Costs on appeal are assessed to the appellant, RLR Investments, LLC.


s/ Thomas R. Frierson, II_____
THOMAS R. FRIERSON, II, JUDGE



NOTES:

SOUTH SIDE OF THE
EDGE OF THE WATER

EXHIBIT A

| | RLR INVESTMENTS, LLC. | | RPJ | MFW |
|---|---|---|---|---|
| BWSC BARGE WAGGONER SUMNER & CANNON, INC. | TREATMENT PLANT TO BELLE ISLAND PIGEON FORGE GREENWAY SEVIER COUNTY, TENNESSEE | | RLR2 | |